**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Richard J. CONTE, Appellant.**

Superior Court of Pennsylvania.

Argued May 1, 2007.

Filed Aug. 2, 2007.

Sharon L. Gray, Wyomissing, for appellant.

Alisa R. Hobart, Assistant District Attorney, Reading, for Commonwealth, appellee.

BEFORE: STEVENS, KLEIN, and PANELLA, JJ.

OPINION BY STEVENS, J.:

¶ 1 This is an appeal from the judgment of sentence entered by the Court of Common Pleas of Berks County, which convicted Appellant on one count of Driving Under the Influence of Alcohol, Highest Rate,[1] on evidence that his Blood Alcohol Content ("BAC") was .230 percent within two hours of driving. Sentenced to serve a mandatory minimum sentence of 72 hours to six months' incarceration and pay a $1,000 fine, Appellant now contends the court erroneously denied his motion to suppress. We affirm.

¶ 2 We review Appellant's challenge under the following well-established standard:

When we review the ruling of a suppression court, we must ascertain whether its factual findings are supported by the record and whether the inferences and legal conclusions drawn from those facts are reasonable. Where the defendant challenges an adverse ruling of the suppression court, we will consider only the evidence for the prosecution and whatever evidence for the defense that remains uncontradicted in context of the whole record. If there is support on the record, we are bound by the facts as found by the suppression court, and we may reverse that court only if the legal conclusions drawn from these facts are in error.

*Commonwealth v. Fulton,* 921 A.2d 1239,

¶ 3 The April 5, 2006 suppression hearing comprised only the uncontradicted testimony of Wyomissing Borough Police Department Patrolman Scott Schaeffer. In the early evening of November 6, 2005, Officer Schaeffer received a radio dispatch regarding a possibly disabled vehicle on the shoulder of a State Route 422 exit ramp. N.T. 4/5/06 at 5. He drove to the scene and pulled up behind Appellant's parked Jeep Cherokee—the only vehicle there at the time [2]—and activated his overhead lights for safety given the nighttime, highway setting. N.T. at 9, 17.

¶ 4 The uniformed officer got out of his patrol car and walked toward Appellant, who had already exited his vehicle as well. N.T. at 16. In a normal conversational tone, the officer asked Appellant "what had happened, [if] he was alright, did he need assistance, those sorts of things." N.T. at 16, 17. As Appellant replied that his jeep had a flat tire, Officer Schaeffer detected Appellant's bloodshot eyes and the odor of alcohol on his breath. N.T. at 6, 17. Appellant also seemed confused about the cause of the flat tire and damage to the corresponding wheel, prompting Officer Schaeffer to request back-up patrol and to initiate field sobriety tests. N.T. at 6–7. The officers determined Appellant failed the tests and placed him under arrest. They transported him to a local hospital for a serum BAC test, which came back at .230%. N.T. at 11; N.T. 10/5/06 at 16.

¶ 5 At the conclusion of the hearing, the suppression court gave the parties seven

---

1. 75 Pa.C.S.A. §§ 3802(c).

2. Officer Schaeffer testified that Appellant's girlfriend arrived by car sometime after he

had already encountered Appellant. N.T. at 17.

days to submit written argument. In his "Brief in Support of Omnibus Pretrial Motion," Appellant argued that Officer Schaeffer's arrival in full uniform, including weapon, and with overhead lights flashing on his patrol car instantly subjected Appellant to an investigative detention unsupported by reasonable suspicion. To support this argument, however, Appellant relied on assertions that he failed to offer into evidence at the hearing, such as the claim he was walking toward his girlfriend's car for a ride home when Officer Schaeffer stopped him and questioned him about his jeep. Appellant also misquoted Officer Schaeffer's answer to the defense's hypothetical question of whether the officer would have allowed Appellant to walk away if he had said he needed no assistance. "I think I would have checked on things a little bit and made sure. I don't want to put anybody's safety at risk out there at night on the highway with no phones and so forth[,]" N.T. 4/05/06 at 18, was the officer's answer. This answer became "No, I wanted to know what was going on[ ]" in Appellant's Brief.

¶ 6 The court denied Appellant's motion and, on October 5, 2006, presided over Appellant's bench trial. The Commonwealth again relied on the testimony of Officer Schaeffer to support its case. Appellant, meanwhile, presented for the first time evidence better suited for the suppression hearing—his girlfriend's testimony that she had arrived by car at the same time as Officer Schaeffer, such that Appellant was clearly in need of no assistance. Her testimony, Appellant argued, established that Officer Schaeffer thus detained Appellant as part of an unlawful investigative detention from the moment he arrived. This belated suppression argument notwithstanding, the court determined that the Commonwealth proved each element of Section 3802(c) beyond a reasonable doubt

and convicted Appellant under the DUI provision.

■ ¶ 7 Herein, Appellant raises three issues that coalesce to state a driver is instantly subjected to an investigative detention—and not a mere encounter—whenever a uniformed officer wearing a gun pulls his patrol car behind a disabled car along the highway, activates his overhead lights, and begins a dialogue with the driver. His position is without merit.

■ ¶ 8 Three levels of interaction between citizens and police exist as follows:

A primary purpose of both the Fourth Amendment and Article I, Section 8 "is to protect citizens from unreasonable searches and seizures." Not every encounter between citizens and the police is so intrusive as to amount to a "seizure" triggering constitutional concerns. [Our courts have] noted that there are three basic categories of interactions between citizens and the police. The first category, a mere encounter or request for information, does not need to be supported by any level of suspicion, and does not carry any official compulsion to stop or respond. The second category, an investigative detention, derives from *Terry v. Ohio* [, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)] and its progeny: such a detention is lawful if supported by reasonable suspicion because, although it subjects a suspect to a stop and a period of detention, it does not involve such coercive conditions as to constitute the functional equivalent of an arrest. The final category, the arrest or custodial detention, must be supported by probable cause. [Our courts have] have acknowledged this approach to police/citizen encounters under both the Fourth Amendment and Article I, Section 8.

*Commonwealth v. Smith*, 575 Pa. 203, 836 A.2d 5, 10 (2003) (citations omitted).

¶ 9 In *Commonwealth v. Johonoson*, 844 A.2d 556 (Pa.Super.2004), this Court upheld the denial of the defendant's motion to suppress evidence in a case involving facts virtually identical to those in the present case. At approximately 3:00 a.m., the defendant was traveling a rural road at a very slow rate of speed with hazard lights flashing when he voluntarily pulled over to the shoulder of the road. Shortly thereafter, a Pennsylvania State Police patrol car pulled up behind the defendant with overhead lights activated. The state trooper asked the defendant what kind of trouble he was having, and, during the defendant's reply, detected about the defendant classic signs of intoxication. The state trooper administered field sobriety tests, which, in his determination, the defendant failed, and accordingly arrested defendant and charged him with DUI.

¶ 10 The defendant filed a pretrial motion to suppress evidence obtained during the stop. Specifically, he argued that the officer's display of authority, particularly the use of overhead lights, would have made a reasonable person in his position believe he was not free to terminate the police-citizen encounter and was therefore subject to an investigative detention. The suppression court disagreed and denied the motion.

¶ 11 In upholding the suppression court's decision, we reasoned:

We recognize that flashing overhead lights, when used to pull a vehicle over, are a strong signal that a police officer is stopping a vehicle and that the driver is not free to terminate this encounter. The same is not necessarily true under the factual circumstances presented here. It is one traditional function of State Troopers, and indeed all police officers patrolling our highways, to help motorists who are stranded or who may otherwise need assistance. Such assistance is to be expected, and is generally considered welcome.

Often, and particularly at night, there is simply no way to render this aid safely without first activating the police cruiser's overhead lights. This act serves several functions, including avoiding a collision on the highway, and potentially calling additional aid to the scene. Moreover, by activating the overhead lights, the officer signals to the motorist that it is actually a police officer (rather than a potentially dangerous stranger) who is approaching.

By pulling over to the side of the road at 3:00 in the morning on a rural road, after driving slowly with his hazard lights on, Appellant should have had reason to expect that a police officer would pull over and attempt to render aid. Indeed, by his own repeated admissions, Appellant had recently been in a serious accident and was lost on a dark country road. Appellant is exactly the sort of person whom Trooper Perloff has a duty to assist. The fact that Trooper Perloff activated his lights in the course of doing so does not turn the interaction into an investigative detention. Rather, it remained a mere encounter for which no suspicion of illegal activity was required.

*Johonoson*, 844 A.2d at 562.

¶ 12 The same reasoning applies here. The evidence introduced at the suppression hearing shows that a reasonable person in Appellant's position would have understood Officer Schaeffer's arrival as an act of official assistance, and not as the start of an investigative detention. Indeed, our expectation as a society is that a police officer's duty to serve and protect the community he or she patrols extends beyond enforcement of the Crimes Code or Motor Vehicle Code and includes helping citizens evidently in distress. Given this expectation, a citizen whose vehicle sits

apparently disabled along a highway would justifiably experience disbelief or even outrage if a law enforcement officer not otherwise engaged in official response drove by without pulling over and offering assistance.

¶ 13 In a nighttime, highway setting, moreover, the citizen would interpret the officer's activation of overhead lights not as a signal of detention, but rather, as explained in *Johonoson*, as a means to both alert other motorists of a roadside emergency and reassure the stranded citizen about the officer's identity. *Compare Commonwealth v. Hill*, 874 A.2d 1214 (Pa.Super.2005) (holding that overhead lights initiated investigative detention of driver who had safely and voluntarily pulled his vehicle to the side of road some time earlier, where there was no reason for the driver to believe police would stop and render aid).

¶ 14 Under the totality of evidence thus presented at the suppression hearing, the suppression court correctly determined that the initial interaction between Officer Schaeffer and Appellant was but a mere encounter for which no reasonable suspicion was required. Upon first arriving at the scene, Officer Schaeffer asked the kind of questions relating to driver welfare and the operational status of the vehicle one would expect from an officer offering assistance in such circumstances. There was no evidence, moreover, that the officer assumed a threatening or authoritative attitude during this initial encounter. A reasonable person in Appellant's position, therefore, knowing the officer was simply carrying out a highly desirable public safety duty, would have felt free to decline the

officer's offer of help or to otherwise terminate the encounter.[3]

¶ 15 From his lawful vantage point during this exchange, Officer Schaeffer noticed that Appellant displayed classic signs of intoxication. At that moment, reasonable suspicion of Appellant's DUI supported Officer Schaeffer's investigative detention of Appellant. Accordingly, the suppression court did not abuse its discretion or commit an error of law in denying Appellant's motion to suppress evidence.

¶ 16 Judgment of sentence is affirmed.

---

3. The same result would have attained under the "free to leave" test, which arguably would have applied if Appellant had introduced evidence at the suppression hearing that an alternate ride awaited him when his girlfriend's car arrived simultaneously with Officer Schaeffer's patrol car.