**COMMONWEALTH of Pennsylvania,**
**Appellee**

**v.**

**Gregory Philip KENDALL, Appellant.**

Superior Court of Pennsylvania.

Submitted Jan. 5, 2009.

Filed May 29, 2009.

**504**

Clinton T. Barkdoll, Waynesboro, for appellant.

Jeremiah D. Zook, Asst. Dist. Atty., Chambers, for Com., appellee.

BEFORE: STEVENS, KLEIN and KELLY, JJ.

OPINION BY KLEIN, J.:

¶ 1 Gregory Kendall appeals from the judgment of sentence imposed by the Franklin County Court of Common Pleas after he was convicted of driving under the influence of alcohol ("DUI"), 75 Pa.C.S.A. § 3802(b). Kendall argues that the trial court erred in failing to suppress all evidence supporting the DUI conviction because the arresting police officer lacked reasonable suspicion. Because we find that the level of interaction between Kendall and the police officers began as a mere encounter, where reasonable suspicion is not required, we affirm.[1]

¶ 2 At approximately 1:15 a.m. on September 17, 2007, Troopers Long and Dubbs were on routine patrol when they came upon a silver BMW coup traveling in front of their patrol car on Lighthouse Road. After following the car for approximately two or three minutes at a distance of fifty to one hundred feet, the driver activated his turn signal and pulled off to the shoulder of the road. Because Lighthouse Road is a two-lane road with a narrow shoulder, the driver pulled the car partially onto a property that bordered the road; there were no driveways, homes, or stores nearby.

¶ 3 Trooper Long pulled his patrol car behind Kendall's BMW, and both cars remained idle for about one minute. After running the license plate number of the BMW, Trooper Long activated his overhead lights on his patrol car, exited his patrol car and approached the vehicle.

---

1. "When we review the ruling of a suppression court, we must ascertain whether its factual findings are supported by the record and whether the inferences and legal conclusions drawn from those facts are reasonable. Where the defendant challenges an adverse ruling of the suppression court, we will consider only the evidence for the prosecution and whatever evidence for the defense that remains uncontradicted in context of the whole record. If there is support on the record, we are bound by the facts as found by the suppression court, and we may reverse that court only if the legal conclusions drawn from these facts are in error. We review the court's legal decisions *de novo*." *Commonwealth v. Johonoson*, 844 A.2d 556 (Pa.Super.2004) (citing *Commonwealth v. Lewis*, 535 Pa. 501, 636 A.2d 619, 621 (1994)) (internal citations omitted).

Trooper Long asked Kendall why he suddenly pulled over, and Kendall replied that it was to let the patrol car pass. While at the vehicle, Trooper Long observed an open can of beer on the passenger seat and smelled alcohol on Kendall's breath. Kendall also exhibited other indicia of intoxication: slurred speech, glassy eyes and deliberate movements. After Kendall failed a field sobriety test, he was arrested and taken to the hospital for a blood alcohol test that yielded a result of .14%.

¶ 4 Kendall filed an omnibus pre-trial motion to suppress all evidence obtained from the arrest and to dismiss the charges. In his motion Kendall argued that the stop was not supported by reasonable suspicion.

¶ 5 At the suppression hearing, Trooper Long testified that Kendall slowed down, put on his right turn signal, and pulled over to the narrow shoulder of the road. He left his turn signal on. N.T. Suppression, 3/27/08, at 7. Trooper Long testified that there was no driveway or anything there; "there was no reason for him to be pulling off." *Id.* at 5. Trooper Long conceded that he had no reason to stop Kendall, and that Kendall was driving within the posted speed limit within the marked lines on the road. Furthermore, Trooper Long testified that he activated his overhead lights so that the Kendall would be alerted that a police officer was approaching, and so that other passing vehicles would be alerted that there were vehicles stopped along side of the road. Trooper Long testified that one of his thoughts was

"possible vehicle failure." *Id.* at 7. When Trooper Long approached the vehicle, he asked Kendall if he was okay, and then he noticed Kendall's slurred speech, a strong odor of alcohol, and an opened can of Budweiser beer on the passenger seat. *Id.* at 8–9.

¶ 6 Ultimately, the court denied the motion to suppress the evidence. Kendall was convicted of DUI and sentenced to a term of incarceration of twelve to sixty months.

¶ 7 On appeal, Kendall argues that his encounter with Trooper Long amounted to an investigative detention unsupported by reasonable suspicion. The Commonwealth counters that the interaction between Trooper Long and Kendall was in fact a mere encounter, which requires no level of suspicion. *See Johonoson,* 844 A.2d at 561.[2] We believe the record in this case supports the trial court finding that this was just a mere encounter where the officer was trying to determine what was going on and whether the motorist might need assistance. Our Court has held that police officers have a duty to render aid and assistance to those they believe are in need of help. Additionally, we have stated that triggering emergency lights or initiating interaction with a driver does not necessarily shift the interaction between an officer and a driver from a mere encounter to an investigatory detention. *See Johonoson,* 844 A.2d at 556; *see also Commonwealth v. Collins,* 950 A.2d 1041 (Pa.Super.2008) *(en banc)*

**2.** The Supreme Court of Pennsylvania has defined three types of police-citizen interaction: a mere encounter, an investigative detention, and a custodial detention. *Commonwealth v. Boswell,* 554 Pa. 275, 721 A.2d 336, 340 (1998). A mere encounter between police and a citizen "need not be supported by any level of suspicion, and carr[ies] no official compulsion on the part of the citizen to stop or to respond." *Commonwealth v. Riley,* 715

A.2d 1131, 1134 (Pa.Super.1998). An investigatory stop, which subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute an arrest, requires a reasonable suspicion that criminal activity is afoot. *See Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). A custodial search is an arrest and must be supported by probable cause. *Id.*

(initial interaction between state trooper and defendant, a vehicle passenger, following trooper's approach of vehicle in order to conduct a safety check of its passengers after noticing vehicle parked legally after sundown at roadside location, was mere encounter, and thus did not need be supported by any level of suspicion; trooper parked twenty feet away from the rear of the vehicle, trooper testified that no outward sign of distress emanated from the vehicle, that he did not observe anything that would lead him to believe that illegal activity was occurring, and that the occupants of vehicle were not scrambling around as if they were trying to get away because trooper was approaching them, and trooper approached the vehicle requesting information, asking if "everyone was ok."); *Commonwealth v. Conte*, 931 A.2d 690 (Pa.Super.2007).

¶ 8 In *Johonoson*, a state trooper observed a slow-moving vehicle traveling with its flashers activated on rural a road at approximately 3:00 a.m. 844 A.2d at 558–59. Without signal, the driver pulled his vehicle off to the side of road, at which point the officer followed behind. *Id.* at 559. The trooper activated his overhead emergency lights, exited his car, and approached the driver. *Id.* When the trooper approached the driver he immediately noticed signs of intoxication, and subsequently arrested the driver for a DUI offense. *Id.*

¶ 9 The defendant filed a motion to suppress the evidence of his intoxication, arguing that the activation of the officer's overhead emergency lights would have made a reasonable person in his position believe he was not free to leave and, therefore, he was subject to an investigatory detention. This Court upheld denial of the motion, reasoning that:

> By pulling over to the side of the road at 3:00 in the morning on a rural road,

after driving slowly with his hazard lights on, Appellant should have had reason to expect that a police officer would pull over and attempt to render aid ... Appellant is exactly the sort of person whom [an officer] has a duty to assist. **The fact that [the officer] activated his lights in the course of doing so does not turn the interaction into an investigative detention.** Rather, it remained a mere encounter for which no suspicion of illegal activity was required.

*Id.* at 562 (emphasis added).

¶ 10 This Court reached a similar conclusion in *Conte, supra.* There, an officer received a dispatch regarding a disabled vehicle on the shoulder of a road. When the officer arrived at the scene, he pulled behind the vehicle and activated his overhead emergency lights to alert passing vehicles of his presence. The officer approached the driver who had already exited the vehicle, and asked him if he needed help. The driver responded that he had a flat tire. After noticing signs of intoxication while speaking with the driver, the officer decided to administer field sobriety tests, which the driver failed; a blood test later revealed a .23% BAC. The driver was arrested and convicted.

¶ 11 In *Conte*, this Court affirmed trial court's denial of the motion to suppress. Relying on the rationale of *Johonoson*, we explained that "the evidence introduced at the suppression hearing shows that a reasonable person in [the driver's] position would have understood [the officer's] arrival as an act of official assistance, and not as the start of an investigative detention." 931 A.2d at 693; *see also Collins*, 950 A.2d at 1046–47 (explaining that when considering whether interaction with officer is mere encounter or investigatory detention, "the focal point ... must be whether, considering the circumstances surrounding the incident, a reasonable person innocent

of any crime would have thought he was being restrained had he been in the defendant's shoes."). The *Conte* Court further reasoned that police officers have a duty to society to serve and protect their communities. This extends beyond enforcement of the Crimes Code or Motor Vehicle Code and includes the duty to stop and help citizens who are, or appear to be, in distress. *Conte*, 931 A.2d at 693.

¶ 12 It is true that there are cases where the trial court found that the stop was not just a mere encounter to render assistance, and the officer needed reasonable suspicion of criminal activity to detain a vehicle. In those cases, it was found that the driver would not reasonably believe he or she was free to leave or terminate the encounter with the officer. The activation of the officer's emergency lights when the officer is approaching the driver's vehicle may be a factor in what a reasonable driver would believe. Therefore, there would be record support for a trial court finding that the interaction between the officer and the driver amounts to an investigatory detention which requires reasonable suspicion.

¶ 13 These are fact-sensitive situations and in general we must defer to the trial court determination. The cases that hold there *was* an investigative detention are distinguishable from this case, particularly because the trial court did not agree that the stop was to render assistance. In *Commonwealth v.Hill*, 874 A.2d 1214 (Pa.Super.2005), police officers on patrol observed a pickup truck driving slowly. The officers were closely following the truck, when the driver suddenly slowed and pulled off to the side of the road. The officers followed the driver to the side of the road, activated their overhead emergency lights and approached the vehicle. One of the officers asked the driver why he pulled over, to which the driver re-

sponded that he noticed the patrol car following behind him. The officer noticed indicia of alcohol consumption; after failing field sobriety tests, the driver was arrested. 874 A.2d at 1216.

¶ 14 At a suppression hearing, the trial court found that the driver did not commit any traffic violation in the officer's presence, and was not doing anything that would have indicated to the police that he was in need of assistance. *Id.* at 1217. Perhaps the trial court could have viewed the facts differently, but the trial court did not and we deferred to that finding. The Commonwealth filed an appeal, arguing *Johonoson* should guide the court's decision. On appeal, this Court upheld the decision of the trial court, distinguishing *Johonoson* on factual grounds. Unlike the driver in *Johonoson*, who was driving abnormally slow with his flashers activated, the driver in *Hill* did nothing more than pull his truck to the side of the road. In *Johonoson*, we concluded that a police officer's activating his overhead lights in response to a car already pulled off the road does not always indicate compulsory detention of the driver. Where a driver has reason to believe that an officer is simply attempting to render aid, for example, where the driver's car appears disabled, the overhead lights would signal official assistance and be a welcome sight to the driver. 844 A.2d at 562.

¶ 15 In *Commonwealth v. Fuller*, 940 A.2d 476 (Pa.Super.2007), a driver was traveling on an empty road early in the morning and voluntarily pulled his vehicle to the side of the road after noticing a patrol car following closely behind. The officer pulled over after the driver, activated his overhead lights, and approached the driver. Shortly after talking with the driver, the officer noticed signs of intoxication and administered field sobriety tests. Af-

ter failing the tests, the driver was arrested; a blood test yielded a BAC of .18%.

¶ 16 The driver in *Fuller* moved to suppress the evidence for lack of reasonable suspicion, but the trial court denied the motion, concluding that the driver's interaction with the officer was a mere encounter which needed no reasonable suspicion. This Court vacated the judgment and remanded after finding that the encounter between the driver and the officer was not a mere encounter, but an investigatory detention that required reasonable suspicion. This Court found that the record did not support the trial court conclusion that the officer was merely trying to render aid. In reaching its decision, this Court reasoned that unlike *Johonoson,* in *Fuller* the defendant was not driving abnormally slowly or with his flashers activated. Further, the driver in *Fuller* did not engage in any conduct that would suggest to the police that he was in need of assistance. Therefore, there was no reason for the officer to pull over after the driver.

¶ 17 In the instant case, Kendall was driving slowly and then pulled his car off to the side of the road after signaling. Trooper Long had the affirmative duty to assure that Kendall was not in distress, especially since it was 1:15 a.m. and there was no driveway or commercial business in the area where Kendall pulled over. Kendall's actions could have been for a variety of reasons: he may have felt ill, or he may have had a flat tire or some other kind of vehicle failure. Trooper Long had every reason to pull over after Kendall to offer assistance or at the very least make sure there was nothing wrong. Failing to do so would have been careless on the officer's part.

¶ 18 Trooper Long further explained that he pulled over solely because he was

concerned that the driver had a vehicle failure, and he did not observe any indication of criminal activity. *Id.* While we have held that the applicable standard in determining whether an interaction rises to the level of an investigative detention hinges on whether "a reasonable person believe[s] he was not free to go and was subject to the officer's orders," [3] this should not be the only standard in situations like the one at hand. *Cf. Fuller,* 940 A.2d at 479. It has been suggested in the case law that this determination might turn on whether the driver had reason to believe that the officer is simply carrying out his duty to render aid. The ultimate decision is one the suppression judge must make after hearing all of the testimony and determining the credibility of the witnesses. Whether the *officer* believes the driver is free to leave is not the determining factor, and neither is the use of hazard lights before pulling over. On review, if the evidence supports a suppression court's factual findings, we will reverse only if the record does not support the legal conclusions drawn by the trial judge. *Lewis,* 636 A.2d at 621. In this case, we find the evidence supports the court's findings, and we find no error in the legal conclusions drawn from those findings.

¶ 19 In cases where a driver pulls over for an unknown reason, the officer must not be restrained from investigating the situation to assess whether help is needed. If the investigation occurs at night, it is reasonable for an officer to activate overhead lights to ensure his or her own safety as well as the safety of the driver, and to notify passing vehicles of their presence. A driver's unusual behavior is enough of a reason for an officer to stop, assess the situation, and determine whether the driver is in need of assistance.

**3.** *Commonwealth v. Stevenson,* 832 A.2d 1123, 1127 (Pa.Super.2003).

¶ 20 Certainly an officer would realize that there might be a variety of reasons for unusual behavior by a driver which could include driving under the influence of drugs or alcohol. However, merely because the officer considers drunk driving as one alternative does not mean he is precluded from trying to aid a citizen if he also thinks the driver might be in distress. This decision must in the first instance be made by the trial judge and should not be upset unless the record does not support the trial judge's findings.

¶ 21 Given the facts here, and in light of prior cases decided by this Court on the issue, in this case the record supports the trial judge finding that the encounter between Kendall and Trooper Long was not an investigative detention, but rather an officer fulfilling his duty to see if a motorist needed assistance. Therefore, the initial stop was a mere encounter with an officer doing his job and only evolved into an investigative detention when Trooper Long smelled alcohol on Kendall's breath, saw the open beer can, and observed other indicia of intoxication.

¶ 22 Judgment of sentence affirmed.

¶ 23 KELLY, J., files a Dissenting Opinion.

**DISSENTING OPINION BY KELLY, J.:**

¶ 1 Because the record confirms that this interaction was not a mere encounter, and that the state troopers followed and approached Appellant without reasonable suspicion, I respectfully dissent. Trooper Long and his partner followed "just behind" Appellant for "two or three minutes," on a dark remote road "close to a mile, mile and a half," at 1:15 AM. (N.T. Hearing, 3/27/08, at 2–3, 10, 14). Appellant was not speeding, and did not swerve, veer off the road, or cross the center line. (*Id.* at 10, 11, 13). Unlike *Johonoson,* he was not driving unduly slowly; his hazard lights were not activated. Trooper Long conceded that he had "no suspicion at that point of anything." (*Id.* at 11). When Appellant found a straight section of the curving road where he could safely pull over, he put on his right turn signal and pulled his car to the side to let the vehicle following him pass. (*Id.* at 4, 19). The state troopers pulled in behind him. Although Trooper Long claimed concern that Appellant had a vehicle failure, he did not immediately approach. Rather, he testified that "I just stayed behind him until he made an action," (*id.* at 5), and "I just wanted to see what his next action would be, so I just stayed behind him until he made an action." (*Id.* at 7). The troopers waited in their vehicle for "about 30 seconds," and then ran a license plate check which confirmed that Appellant's residence was not in the immediate area. (*Id.*). At that point the troopers activated their lights, exited the vehicle, and approached Appellant. (*Id.* at 7–8). The troopers' inaction did not reflect that they suspected an emergency situation.

¶ 2 This case is indistinguishable on the facts from *Commonwealth v. Fuller,* 940 A.2d 476, 480 (Pa.Super.2007) (appellee did nothing more than pull his truck to side of road to allow another motorist to pass; sentence vacated and remanded) (Pa.Super.2007), and *Commonwealth v. Hill,* 874 A.2d 1214, 1217 (Pa.Super.2005) (appellee only pulled to side of road to let vehicle pass; grant of suppression affirmed). In those cases this Court, over dissents, concluded that the appellants were subjected to investigatory detentions, unsupported by a reasonable suspicion of criminal activity. The record supports the same conclusion here. Accordingly, I respectfully dissent.