J-S59040-14

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| LARRY KONYVES, | : | |
| | : | |
| Appellant | : | No. 1176 EDA 2014 |

Appeal from the Judgment of Sentence Entered April 7, 2014,
In the Court of Common Pleas of Bucks County,
Criminal Division, at No(s): CP-09-CR-0006528-2012

BEFORE:  SHOGAN, LAZARUS and STRASSBURGER*, JJ.

MEMORANDUM BY: STRASSBURGER, J.:          **FILED OCTOBER 17, 2014**

Larry Konyves (Appellant) appeals from the judgment of sentence entered April 7, 2014, following his conviction for driving under the influence of a controlled substance (DUI) -- general impairment, 4th offense;  habitual offenders; driving under suspension;  and, public drunkenness.[1] We affirm.

Appellant was charged with multiple offenses following an interaction with police in a public parking lot, during which Appellant exhibited signs of intoxication.  Subsequently, Appellant filed a motion to suppress the statements obtained during the interaction. On January 15, 2013, following a hearing, Appellant's motion was denied.  Appellant proceeded immediately to a bench trial, after which he was found guilty of the above-mentioned

---

[1] 75 Pa.C.S. §§ 3802(d)(2), 6503.1, and 1543(b)(1), and 18 Pa.C.S. § 5505 respectively.

* Retired Senior Judge assigned to the Superior Court.

offenses. On March 25, 2013, Appellant was sentenced to an aggregate term of two-and-one-half to five years' incarceration. Appellant timely filed post-sentence motions, which were denied. On August 27, 2013, Appellant filed an appeal with this Court, which was quashed as untimely filed on February 25, 2014. *Commonwealth v. Konyves*, 2471 EDA 2013 (Pa. Super. filed Feb. 25, 2014).

Appellant filed a petition pursuant to the Post Conviction Relief Act[2] seeking reinstatement of his appellate rights. That petition was granted on April 7, 2014. This timely appeal followed.

Appellant's first two challenges concern the trial court's denial of his omnibus pretrial motion to suppress. We have discussed our review of suppression claims as follows:

> When considering the denial of a suppression motion, this Court's review is limited to determining whether the [lower] court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed in the suppression court, we consider only the Commonwealth's evidence and so much of the appellant's evidence as is uncontradicted when read in the context of the record as a whole. Where the record supports the suppression court's factual findings, we are bound by those facts and may reverse only if the legal conclusions drawn from them are erroneous.

*Commonwealth v. West*, 937 A.2d 516, 527 (Pa. Super. 2007) (internal citations omitted).

---

[2] 42 Pa.C.S. §§ 9541-9546.

Appellant begins by arguing that his interaction with Officer Schuck, and his subsequent arrest, were not supported by the requisite level of suspicion. Appellant's Brief at 24. Appellant's argument seems to focus on the fact that the interaction began as an investigation of potential vandalism, not suspicion of DUI. *Id.* at 21-22. Thus, Appellant contends that Officer Schuck's initial observations were "consistent with innocent activity" which did not warrant further investigation. *Id.* at 26.

We evaluate Appellant's claim mindful of the following.

> "Interaction" between citizens and police officers, under search and seizure law, is varied and requires different levels of justification depending upon the nature of the interaction and whether or not the citizen is detained. Such interaction may be classified as a "mere encounter," an "investigative detention," or a "custodial detention." A "mere encounter" can be any formal or informal interaction between an officer and a citizen, but will normally be an inquiry by the officer of a citizen. The hallmark of this interaction is that it "carries no official compulsion to stop or respond."
>
> In contrast, an "investigative detention," by implication, carries an official compulsion to stop and respond, but the detention is temporary, unless it results in the formation of probable cause for arrest, and does not possess the coercive conditions consistent with a formal arrest. Since this interaction has elements of official compulsion it requires "reasonable suspicion" of unlawful activity. In further contrast, a custodial detention occurs when the nature, duration and conditions of an investigative detention become so coercive as to be, practically speaking, the functional equivalent of an arrest.

*Commonwealth v. DeHart*, 745 A.2d 633, 636 (Pa. Super. 2000) (citations omitted).

Instantly, the trial court summarized Officer Schuck's testimony from the suppression hearing as follows.

> While stopped at a traffic light on West Old Lincoln Highway, near the intersection at Wheeler Way, [Officer Schuck] observed a silver Acura drive behind a church to his right. Officer Schuck testified that he was familiar with this particular area since it was part of his patrol zone and that landscaping equipment is frequently kept out in the open at the church parking lot. Officer Schuck observed the vehicle travel towards the landscaping or equipment area.
>
> The parking lot is accessible by two common entrances; one entrance is off of Wheeler Way and the other entrance is off West Old Lincoln Highway. … Officer Schuck testified that at the time of the incident, he believed the church and daycare center were operating, and that the church was "an open, functioning church, and that the church building was occupied generally at that time." Special permits are not required to park in the parking lot and there are no barriers that would prohibit entrance. According to Officer Schuck, there are approximately fifty to seventy-five parking spots in the parking lot, and the parking lot does not have any "no parking" or "no trespassing signs."
>
> Officer Schuck entered the parking lot, [] and noticed the [silver Acura] was stopped and parked between a trailer and a truck and that [Appellant] was standing outside of his vehicle, with the car door open, urinating. When [Appellant] noticed Officer Schuck, he explained to the Officer that the equipment in the parking lot was his and that he had just stopped to "take a piss." Officer Schuck then proceeded to get out of his patrol car and asked [Appellant] for identification. [Appellant] told Officer Schuck his name, but did not give Officer Schuck any identification cards. Officer Schuck stated that [Appellant] appeared dumbfounded, as if he was in some sort of "stupor." After asking [Appellant] for his identification three or four times, [Appellant] handed Officer Schuck a stack of cards. The stack of cards contained business cards and a Pennsylvania non-driver photo ID.

Officer Schuck proceeded to ask [Appellant] whether or not he had been drinking and [Appellant] replied that he had not. During this time, Officer Schuck observed that [Appellant] was having trouble standing and was "swaying" as he stood. When Officer Schuck approached [Appellant], there was no odor of alcohol present, but [Appellant's] pupils were small and did not change size when Officer Schuck introduced [Appellant's] eyes to light. Officer Schuck then asked [Appellant] if he had taken any drugs and [Appellant] "shrugged his shoulders" and told Officer Schuck that he was prescribed the drugs he was taking. [Appellant] told the Officer that he had taken two Xanax within three hours, and that he was prescribed to take two Xanax a day.

Officer Schuck stated that he suspected [Appellant] was under the influence of a controlled substance and called for other units to come as backup. Officer Schuck administered a preliminary breath test on [Appellant] and ruled out alcohol when the test revealed zero alcohol content. While waiting for backup to arrive, Officer Schuck noticed that [Appellant] was still unsteady on his feet and at one point, [Appellant] fell back on Officer Schuck's patrol vehicle. When Officer Schuck asked [Appellant] if he could stand by himself and not lean on the patrol car, [Appellant] had trouble and continued to lean on the patrol car several times. When [Appellant] spoke to Officer Schuck his speech was very slow and Officer Schuck testified that he believed [Appellant] was going to "fall asleep while he was talking." According to Officer Schuck, [Appellant] would "start to answer or not answer and close his eyes, and then it would take a couple of seconds and some prodding from me [Officer Schuck] before he'd open his eyes and respond."

After backup arrived, Officer Schuck administered three field sobriety tests, all of which [Appellant] failed. After the last test, Officer Schuck asked [Appellant] whether or not he should be driving in this condition and [Appellant] responded that he should not be and asked to call his wife. At this point in time, Officer Schuck formed the opinion that [Appellant] was under the influence of a controlled substance to a degree that rendered him incapable of safely driving and placed [Appellant] under arrest.

Trial Court Opinion, 6/2/2014, at 2-5 (citations to notes of testimony and footnotes omitted).

As discussed above, a "mere encounter" can be any formal or informal interaction between an officer and a citizen, but will normally be an inquiry by the officer of a citizen. Based on our review of the record, we determine that the interaction between Appellant and Officer Schuck began as a mere encounter where the officer was trying to determine what was going on in the parking lot. **Commonwealth v. Kendall**, 976 A.2d 503 (Pa. Super. 2009). However, the officer quickly developed reasonable suspicion that Appellant had been DUI, raising the level of the encounter to an investigative detention, once he observed Appellant urinating in a public parking lot, unable to provide proper identification, and exhibiting outward signs of being under the influence of a controlled substance. That the criminal activity the officer initially suspected was unfounded is immaterial in this instance. **See Commonwealth v. Collins**, 950 A.2d 1041 (Pa. Super. 2008) (upholding the legality of citizen-police interaction where officer engaged in a mere encounter to inquire if occupants of a stopped vehicle needed assistance and quickly developed reasonable suspicion supporting an investigatory detention once he smelled and observed marijuana in the vehicle). Thus, contrary to Appellant's assertions, we conclude that the trial court did not err in determining that Officer Schuck's pre-arrest interaction with Appellant was lawful and supported by the requisite level of suspicion.

In his second argument, Appellant challenges Officer Schuck's question, posed after Appellant had allegedly failed three field sobriety tests, "Do you think you should be driving in this condition?" to which Appellant responded, "No. Can I call my wife?" Appellant's Brief at 23-24. Appellant maintains that, at the time this question was asked, he was in custody and subject to interrogation by Officer Schuck; thus, the statement was obtained in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966). *Id.* at 19.

We note that

> the *Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. Thus, interrogation occurs where the police should know that their words or actions are reasonably likely to elicit an incriminating response from the suspect. [I]n evaluating whether *Miranda* warnings were necessary, a court must consider the totality of the circumstances. In conducting the inquiry, we must also keep in mind that not every statement made by an individual during a police encounter amounts to an interrogation. Volunteered or spontaneous utterances by an individual are admissible even without *Miranda* warnings.

*Commonwealth v. Williams*, 941 A.2d 14, 30 (Pa. Super. 2008) (citations and quotations omitted).

> Whether a person is in custody for *Miranda* purposes depends on whether the person is physically denied of [his or her] freedom of action in any significant way or is placed in a situation in which [he or she] reasonably believes that [his or her] freedom of action or movement is restricted by the interrogation. Moreover, the test for custodial interrogation does not depend upon the subjective intent of the law enforcement officer interrogator. Rather, the test focuses on whether the individual being interrogated reasonably believes [his or her] freedom of action is being restricted.

Under the totality of the circumstances approach, the following factors are relevant to whether a detention has become so coercive as to constitute the functional equivalent of a formal arrest: the basis for the detention; its length; its location; whether the suspect was transported against his or her will, how far, and why; whether restraints were used; whether the law enforcement officer showed, threatened or used force; and the investigative methods employed to confirm or dispel suspicions.

*Id.* at 30-31 (citations and quotations omitted).

Instantly, Officer Schuck testified that his vehicle was parked approximately two car lengths away from Appellant's vehicle, which was parked against a fence between a truck and a trailer. N.T., 1/15/2013, at 48-49. Only a short period of time elapsed between the officer's investigatory stop and Appellant's arrest, during which time two additional patrol cars arrived for backup as Appellant performed field sobriety tests. *Id.* at 57-58. However, Appellant was not expressly told he was **not** free to leave. On these bases, the trial court concluded that, under the totality of the circumstances, ***Miranda*** warnings were not necessary. Trial Court Opinion, 6/2/2014, at 9. We disagree.

The evidence of record reveals that Appellant could have reasonably believed that his freedom of movement was restricted. There were three uniformed officers present on scene, Appellant's vehicle was parked facing a fence and was blocked in on either side by landscaping equipment, and Appellant was told to stand next to Officer Schuck's vehicle to wait for back up to arrive. Additionally, Appellant had just failed three field sobriety tests.

Accordingly, we find that Appellant was in custody, or the functional equivalent thereof, at the time the question was posed. Moreover, Officer Schuck's question to Appellant regarding whether he believed he should be driving was reasonably likely to elicit an incriminating response. *See Commonwealth v. Ingram*, 814 A.2d 264, 271 (Pa. Super. 2002) (holding that interrogation occurs when the police should know that their words are reasonably likely to elicit an incriminating response from the suspect). Thus, Appellant should have been given *Miranda* warnings, and in the absence of such warnings, Appellant's statement should have been suppressed.[3]

However, this finding does not end our review of this issue. The Commonwealth argues that, even if Appellant's statement is inadmissible, the error admitting the statement is harmless. Commonwealth's Brief at 20. Given the overwhelming nature of the evidence of record, we agree. Therefore, we conclude that Appellant is not entitled to a new trial. *See also Commonwealth v. Baez*, 720 A.2d 711, 720 (Pa. 1998) ("A suppression

---

[3] We limit this holding to the statement elicited by Officer Schuck's direct question to Appellant. While the record reflects that Appellant made many more statements to officers following his arrest, none of these was in direct response to questions posed by the officers, but were voluntary, spontaneous utterances by Appellant while in custody and, thus, not subject to *Miranda*. *Williams*, *supra*.

In light of our holding that Appellant's statement was, in fact, inadmissible, and our analysis of his challenge to the sufficiency of the evidence presented, *infra.*, we need not address Appellant's *corpus delicti* argument.

court's error regarding failure to suppress statements by the accused will not require reversal if the Commonwealth can establish beyond a reasonable doubt that the error was harmless.").

In his remaining issues, Appellant challenges the sufficiency of the evidence presented at trial to convict him of DUI. Appellant's Brief at 26-31.[4]

> A challenge to the sufficiency of the evidence is a question of law, subject to plenary review. When reviewing a sufficiency of the evidence claim, the appellate court must review all of the evidence and all reasonable inferences drawn therefrom in the light most favorable to the Commonwealth, as the verdict winner. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. The Commonwealth need not preclude every possibility of innocence or establish the defendant's guilt to a mathematical certainty. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. Williams***, 871 A.2d 254, 259 (Pa. Super. 2005) (citations and quotations omitted).

---

[4] Appellant's statement of issues includes bald challenges to the sufficiency of the evidence presented to sustain his conviction for habitual offenders, driving under suspension, and public drunkenness; however, Appellant's brief does not contain any discernable argument as to those claims. Nor does Appellant specify which elements of those charges the Commonwealth failed to prove beyond a reasonable doubt. Accordingly, we find any claims related to those convictions waived. ***Commonwealth v. Jones***, 815 A.2d 598, 604 n. 3 (Pa. 2002), *citing* ***Commonwealth v. LaCava***, 666 A.2d 221 (Pa. 1995) (issue included in appellant's "Statement of Questions Involved" was waived by failure to address issue in brief itself).

Appellant was convicted of DUI - general impairment, which provides, in relevant part, "[a]n individual may not drive, operate or be in actual physical control of the movement of a vehicle [while t]he individual is under the influence of a drug or combination of drugs to a degree which impairs the individual's ability to safely drive, operate or be in actual physical control of the movement of the vehicle." 75 Pa.C.S. § 3802(d)(2). The provisions of Section 3802 "shall apply upon highways and trafficways throughout this Commonwealth." 75 Pa.C.S. § 3101(b). The statute defines "highway" as "[t]he entire width between the boundary lines of every way publicly maintained when any part thereof is open to the use of the public for purposes of vehicular travel.

The term includes a roadway open to the use of the public for vehicular travel on grounds of a college or university or public or private school or public or historical park." 75 Pa.C.S. § 102. "Trafficway" is defined as "[t]he entire width between property lines or other boundary lines of every way or place of which any part is open to the public for purposes of vehicular travel as a matter of right or custom." *Id.*

Appellant argues that the parking lot in which he was arrested is "not a publically maintained highway" and, therefore, the Commonwealth has failed

to meet its burden of proving that Appellant committed DUI. Appellant's Brief at 26.[5] After review, we determine that this claim is without merit.

As discussed above, Officer Schuck's testimony established that the lot in question serviced a church and daycare, and was used as a storage location for landscaping equipment. The lot was accessible from two separate entrances, both of which connected with roadways maintained by the Commonwealth. There were no bars or gates precluding entry to the general public, nor was a pass or permit required for access to the lot. As the trial court points out, these circumstances "suggest that the parking lot is customarily used by at least certain members of the public, and that it can be used for vehicular traffic. Therefore, accepting Officer Schuck's testimony as credible, the Commonwealth proved that … [Appellant] was operating a vehicle on a trafficway for purposes of the Motor Vehicle Code." Trial Court Opinion 6/2/2014, at 12-13. We agree with the trial court's assessment and hold that Appellant is not entitled to relief. *See Commonwealth v. Proctor*, 625 A.2d 1221, 1224 (Pa. Super. 1993) (holding that a mall parking lot that is open to the public for the purposes of vehicular traffic as a matter of right or custom is a trafficway for the purposes of the DUI statute); *See also Commonwealth v. Cozzone*, 593 A.2d 860 (Pa. Super.

---

[5] Notably, Appellant does not challenge the Commonwealth's evidence that he was under the influence of prescription drugs to the point where he was unable to operate safely a motor vehicle or that he was in actual physical control of his vehicle at the time of his arrest.

1991) (finding that the parking area of condominium complex is trafficway as it is generally open to public); ***Commonwealth v. Wilson***, 553 A.2d 452 (Pa. Super. 1989) (concluding that the parking lot to a lounge is trafficway as it is generally open to the public).

Accordingly, for all the foregoing reasons, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judge Lazarus joins the memorandum.

Judge Shogan concurs in the result.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/17/2014