J.A02040/16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| CHRISTOPHER JACOB FEDDER, | : | |
| | : | |
| Appellant | : | |
| | : | No. 1233 MDA 2015 |

Appeal from the Judgment of Sentence June 22, 2015
in the Court of Common Pleas of Snyder County Criminal Division
at No(s): CP-55-CR-0000285-2014

BEFORE: PANELLA, STABILE, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:                     **FILED MARCH 30, 2016**

Appellant, Christopher Jacob Fedder, appeals from the judgment of sentence entered in the Snyder County Court of Common Pleas following his bench convictions for driving under the influence of alcohol ("DUI")[1] and the summary offense of vehicular hazard signal lamps.[2]  Appellant contests the suppression court's denial of his motion to suppress evidence.  We affirm.

The suppression court made the following findings of fact:

> The police had been dispatched to Routes 11-15 for a report of a vehicle traveling northbound in the southbound lanes.  While searching for this vehicle, the police observed [Appellant's] vehicle stopped on the shoulder in reverse gear with its backup lights illuminated, the engine running,

---

[*] Former Justice specially assigned to the Superior Court.

[1] 75 Pa.C.S. § 3802(a)(1), (c).

[2] 75 Pa.C.S. § 4305(a).

and hazard lights not on. The police pulled in behind [Appellant's] vehicle and activated their emergency lights. State Trooper Whitford testified that he activated his emergency lights for his safety. During this initial contact, [Appellant] did provide the trooper with his Delaware driver's license. During cross-examination, Trooper Whitford testified that his initial stop behind the [Appellant's] vehicle related to the facts that [Appellant] did not have his hazard lights activated, the dispatch concerning a car traveling north in a southbound lane, and an inquiry to determine if [Appellant] was injured or in need of help. This limited inquiry did not elevate what began as a mere encounter to an investigatory detention. Later, the trooper observed bloodshot glassy eyes. He asked [Appellant] to submit to a PBT [preliminary breath test], which the defendant refused. Later, [Appellant] submitted to a blood test which indicated a .196 blood alcohol level.

Trial Ct. Op., 8/25/15, at 2 (record citations omitted).

We note that Trooper Whitford indicated that upon first encountering Appellant in his car, he was covered in barbecue sauce from chicken wings. N.T. Suppression Hr'g, 1/9/15 at 8.[3] Therefore, he stated that he could not, at least initially, smell any alcohol, only "an abundance of barbecue sauce." *Id.* However, once Appellant exited the vehicle, Trooper Whitford began "to observe the odor of alcohol coming from [Appellant]." *Id.* at 10. Further, when he was securing the vehicle, Trooper Whitford also saw two full unopened cans of beer next to the driver's seat. *Id.* at 27. Trooper Whitford also performed standard field sobriety tests ("SFSTs") which indicated that Appellant was intoxicated. *Id.* at 10. In addition, Appellant

_____

[3] Also present that night with Trooper Whitford was Corporal Richy. N.T. at 5.

admitted to Trooper Whitford that he had been driving the vehicle. *Id.* at 19.

Appellant, on November 14, 2014, filed an omnibus pretrial motion seeking, *inter alia*, suppression of the evidence obtained by the police. The suppression court held a hearing on Appellant's omnibus pretrial motion on January 9, 2015. On that same day, the court issued an order denying Appellant's suppression motion. Specifically, the suppression court held that the interaction between the troopers and Appellant constituted a mere encounter not requiring reasonable suspicion. In addition, the suppression court found that probable cause supported Appellant's arrest.

After Appellant was found guilty on March 25, 2015, the court sentenced him to eleven days to six months' imprisonment on June 22, 2015. Appellant filed a timely notice of appeal and a court-ordered statement of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b). On August 25, 2015, the court filed a responsive Rule 1925(a) opinion.

On appeal, Appellant raises the following issues for our consideration.

> Whether the trial court erred in denying Appellant's motion to suppress challenging his roadside detention?

> Whether the trial court erred in denying Appellant's motion to suppress challenging his arrest?

Appellant's Brief at 4.

In his first issue, Appellant argues that the trial court erred by denying his suppression motion because the troopers' encounter with Appellant constituted an investigative detention necessitating reasonable suspicion. Specifically, Appellant emphasizes that the troopers were responding to an anonymous tip of erratic driving, thus their purposes were by nature "investigative" and did not constitute a mere welfare check. Therefore, because the anonymous tip lacked specificity, Appellant argues that his contact with police constituted an investigative detention made without probable cause. He particularly points to Trooper Whitford's testimony, where he admits that he did not initially smell alcohol emanating from Appellant, to support his contention that the trooper did not have sufficient reasonable suspicion to support an investigative detention. In the alternative, Appellant argues that if the troopers approached his vehicle due to his failure to utilize his hazard signal lamps, such stop was made without probable cause. Appellant avers that because the troopers saw his reverse and brake lights engaged, it was more probable than not that he was preparing to immediately re-enter the roadway.

Turning to Appellant's second issue, he contends that the troopers did not have sufficient probable cause to support his arrest. He argues that the troopers had no evidence that he had been erratically driving or that he was substantially impaired due to alcohol consumption. He points to the fact that his car was stopped when the troopers came into contact with him and

any SFSTs that he may have failed must be invalidated due to the troopers' failure to properly administer the tests.

Both of Appellant's issues concern the suppression court's denial of his suppression motion. When considering the trial court's denial of a motion to suppress, this Court employs the following standard of review:

> [An appellate court's] standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, [the appellate court is] bound by [those] findings and may reverse only if the court's legal conclusions are erroneous. Where . . . the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of the courts below are subject to [] plenary review.

***Commonwealth v. Jones***, 121 A.3d 524, 526-27 (Pa. Super. 2015) (citation omitted).

It is well-established that "[t]he Fourth Amendment of the Federal Constitution and Article I, Section 8 of the Pennsylvania Constitution protect individuals from unreasonable searches and seizures." ***Commonwealth v. Walls***, 53 A.3d 889, 892 (Pa. Super. 2012). In analyzing the

constitutionality of police-citizen interactions, we look to the nature of the

exchange between an officer and a citizen, which are categorized as follows.

> Fourth Amendment jurisprudence has led to the development of three categories of interactions between citizens and the police. The first of these is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or respond. The second, an "investigative detention" must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

*Commonwealth v. Gutierrez*, 36 A.3d 1104, 1107 (Pa. Super. 2012)

(citation omitted).

When analyzing whether police contact constitutes a mere encounter

or an investigatory detention, we employ the following precepts:

> To determine whether a mere encounter rises to the level of an investigatory detention, we must discern whether, as a matter of law, the police conducted a seizure of the person involved. To decide whether a seizure has occurred, a court must consider all the circumstances surrounding the encounter to determine whether the demeanor and conduct of the police would have communicated to a reasonable person that he or she was not free to decline the officers' request or otherwise terminate the encounter. Thus, the focal point of our inquiry must be whether, considering the circumstances surrounding the incident, a reasonable person innocent of any crime, would have thought he was being restrained had he been in the defendant's shoes.

*Commonwealth v. Collins*, 950 A.2d 1041, 1046-47 (Pa. Super. 2008)

(citation omitted) (holding that interaction between the petitioner and police

was a mere encounter where the petitioner was approached in his parked car, in a public parking lot, by an officer with his police vehicle headlights activated).

We also note the following with particular relevancy for the instant case:

> In cases where a driver pulls over for an unknown reason, the officer must not be restrained from investigating the situation to assess whether help is needed. If the investigation occurs at night, it is reasonable for an officer to activate overhead lights to ensure his or her own safety as well as the safety of the driver, and to notify passing vehicles of their presence. A driver's unusual behavior is enough of a reason for an officer to stop, assess the situation, and determine whether the driver is in need of assistance.

> Certainly an officer would realize that there might be a variety of reasons for unusual behavior by a driver which could include driving under the influence of drugs or alcohol. However, merely because the officer considers drunk driving as one alternative does not mean he is precluded from trying to aid a citizen if he also thinks the driver might be in distress.

***Commonwealth v. Kendall***, 976 A.2d 503, 508-09 (Pa. Super. 2009) (holding that where the petitioner had been driving slowly prior to coming to a complete halt in a deserted area, the police officer's subsequent interaction constituted a mere encounter because the officer was justified in conducting a welfare check). In **Kendall**, the officer detected a strong odor of alcohol emanating from the petitioner and saw an open container of beer in the petitioner's vehicle. ***Id.*** at 505. There, the petitioner was ultimately convicted of DUI. ***Id.*** at 504.

Further, the existence of probable cause, in the context of an arrest, is resolved as follows:

> To determine whether probable cause exists, we must consider whether the facts and circumstances which are within the knowledge of the officer at the time of the arrest, and of which he has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that the suspect has committed or is committing a crime.

*Commonwealth v. Ibrahim*, 127 A.3d 819, 824 (Pa. Super. 2015) (citations omitted). Specifically, in regard to arrests for DUI, we note that "[p]robable cause exists where the officer has knowledge of sufficient facts and circumstances to warrant a prudent person to believe that the driver has been driving under the influence of alcohol or a controlled substance." *Commonwealth v. Hilliar*, 943 A.2d 984, 994 (Pa. Super. 2008).

In the case *sub judice*, Appellant's car was stopped along the shoulder of a highway, with the brake lights engaged and in reverse gear, without the use of hazard lights. While it is correct that Trooper Whitford was initially responding to an anonymous tip regarding erratic driving, the trooper also testified that he approached Appellant's vehicle to ascertain whether help was needed. In *Collins*, we concluded that the officer at issue was justified in checking on the welfare of the occupants of a legally parked car, which did not exhibit any outward sign of distress or illegal activity, and that such contact constituted a mere encounter. *See Collins*, 950 A.2d 1047-48. There, we specifically emphasized that a reasonable person who sits in a

vehicle that is apparently disabled along a highway, would expect an officer in the vicinity to make a welfare check and would feel free to terminate such an encounter. *Id.* Likewise, in the instant case, Appellant's vehicle was stopped along a highway with no outward signs of distress, and Trooper Whitford conducted a proper welfare check from which a reasonable person would feel free to leave. *See Id.* Accordingly, we hold that the evidence of record was sufficient to support the suppression court's conclusion that the initial encounter between Trooper Whitford, Corporal Richy, and Appellant was a mere encounter not requiring reasonable suspicion. *See Jones*, 121 A.3d at 526-27; *Kendall*, 976 A.2d at 508-09; *Collins*, 950 A.2d at 1046-47. Therefore, Appellant's first issue lacks merit.

In his second issue, Appellant contends that the troopers lacked probable cause to effectuate his arrest and therefore his suppression motion was improperly denied. Appellant particularly emphasizes that Trooper Whitford did not observe Appellant driving erratically, did not initially smell alcohol emanating from Appellant, and did not "medically prequalify" Appellant before requiring him to perform SFSTs. However, the record reflects that Appellant admitted to Trooper Whitford that he had been the driver of the car in question. N.T. Suppression Hr'g at 10. Trooper Whitford also initially observed Appellant to have glassy eyes and a disheveled appearance, as he was covered in barbeque sauce. *Id.* at 8. Further, upon Appellant's exit from the vehicle, the trooper did encounter the strong smell

of alcohol and observed full containers of alcohol in the car. *Id.* at 10, 27. Accordingly, we hold that under the factual circumstances presented, the troopers had ample evidence to support the belief that they had probable cause to arrest Appellant for DUI. *See Ibrahim*, 127 A.3d at 824; *Hilliar*, 943 A.2d at 994. Therefore, we conclude that the suppression court's denial of Appellant's suppression motion is supported by the record. *See Jones*, 121 A.3d at 526-27. In light of the foregoing, Appellant's second issue must also fail and we affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/30/2016