**COMMONWEALTH of Pennsylvania, Appellant**

v.

**Christopher M. COLLINS, Appellee.**

Superior Court of Pennsylvania.

Argued Feb. 21, 2008.

Filed June 4, 2008.

---

Karen E. Kuebler, Asst. Dist. Atty., Bellefonte, for the Com., appellant.

Parviz Ansari, Bellefonte, for appellee.

BEFORE: FORD ELLIOTT, P.J., STEVENS, ORIE MELVIN, BENDER, BOWES, GANTMAN, PANELLA, DONOHUE and ALLEN, JJ.

OPINION BY STEVENS, J.:

¶ 1 This is an appeal from the order entered by the Honorable Bradley P. Lunsford, Judge of the Court of Common Pleas of Centre County, Pennsylvania, granting Appellee's Omnibus Pre-trial Motion to Suppress Evidence. At issue is whether a police officer's safety check of passengers in a vehicle parked legally, after sundown, at a roadside location constitutes a mere encounter or an investigative detention. We find that given the totality of the circumstances, there was a mere encounter. We reverse and remand for further proceedings.

¶ 2 On February 22, 2006, Trooper Joshua Walton of the Pennsylvania State Police filed a criminal complaint charging Appellee with one count of Possession of Drug Paraphernalia.[1] On April 12, 2006, Appellee waived his right to a Preliminary Hearing on this charge, and on June 6, 2006, Appellee filed an Omnibus Pre–Trial Motion, Motion to Suppress. After a hearing, the motion was granted by the suppression court on July 11, 2006. The Commonwealth filed its Notice of Appeal on August 9, 2006.[2] On August 11, 2006, a Pa.R.A.P. 1925(b) statement was ordered by the lower court and later amended on August 21, 2006. A timely 1925(b) statement was filed on August 22, 2006, and the trial court filed its Pa.R.A.P. 1925(a) opinion on August 29, 2006.

¶ 3 This Court must review whether the suppression court erroneously determined Appellee's interaction with the Trooper was an investigative detention, unsupported by reasonable suspicion.

¶ 4 Trooper Walton, of the Pennsylvania State Police Rockview Station, testified on direct examination that he was on routine patrol on February 13, 2006, and at the time, he was with the State Police for approximately nine months. He was traveling southbound on State Route 150, at 7:00 p.m., and observed a vehicle parked at the Bald Eagle State Park overlook. Trooper Walton testified that he "always stops for vehicles parked along the roadway." N.T. 7/11/06 at 4. His reasoning was to "stop and see if they're all right." N.T. 7/11/06 at 4.

¶ 5 Trooper Walton explained that the vehicle was not moving when he first saw it, and the vehicle did not attempt to move as he approached. He further noted that he parked his car to the right of the vehicle, and his headlights were shining into the passenger compartment of the vehicle but he did not block the vehicle from leaving. Trooper Walton testified that he first spoke with the front seat passenger of the vehicle, Appellee, and the Trooper noticed a bong[3] between the seats and the smell of marijuana.

 ¶ 6 Trooper Walton used his flashlight when he approached the passenger side of the vehicle because his body blocked the light from his patrol car's headlights. After the approach, Trooper Walton returned to his patrol car, turned on the in-car camera and called for backup.

---

1. 35 P.S. § 780–113(a)(32).

2. Jurisdiction is invoked pursuant to Pa. R.A.P. 311(d) wherein the Commonwealth certified in its Notice of Appeal that the trial court's July 11, 2006, Order terminated or substantially handicapped the prosecution.

See Pa.R.A.P. 311(d); Commonwealth v. D.S., 903 A.2d 582 (Pa.Super.2006).

3. The lower court took judicial notice that a bong is a type of water pipe used for smoking marijuana.

The bong was seized,[4] and the Trooper received consent to search the vehicle. Upon questioning ownership of the bong, the driver of the vehicle pointed to Appellee, and Appellee stated it was his. Trooper Walton stated that because Appellee claimed possession of the bong, Appellee would be arrested for drug paraphernalia. Appellee was not taken into custody at that time, and Appellee and the other occupants of the vehicle remained at the location after the State Police departed. A summons was sent to Appellee through the magisterial district justice, and Appellee was identified as the person cited by Trooper Walton at the suppression hearing.

¶ 7 On cross-examination, Trooper Walton testified that the vehicle was parked overlooking the lake, that is, where people park when they chose to park at the overlook and that he has previously seen people parked there. Trooper Walton stated on the record that his reason for approaching this vehicle was because it was too close to the street, he thought it was broken down, and he does not usually see vehicles parked at the overlook after dark. N.T. 9. Trooper Walton testified there is nothing wrong with parking at that particular location after dark. Moreover, he stated the vehicle was not parked in any unusual manner, and no parking violations were present.

¶ 8 Trooper Walton testified that it did not appear to him that there was any outward sign of distress from the occupants of the vehicle and that he did not observe anything that led him to believe that there was something illegal going on at that particular time.

¶ 9 When asked if it is more common to approach the driver of the vehicle first, Trooper Walton replied that no, it was not, and that he routinely approaches the passenger side, especially during traffic stops. He stated that was his practice and that the passenger side in this case was the closest side to him. Trooper Walton testified that the car window was rolled up when he first approached the vehicle and then, simultaneously as he walked up to the vehicle, Appellee rolled down the window. The interior lights in the subject car were off. When asked about the dialogue between the Trooper and the occupants, Trooper Walton stated that he walked up to the vehicle, asked if everything was okay, and in response, Appellee blurted out that the occupants had been smoking marijuana. Not until his question was answered did he discover the occupants' activities and see the bong resting between the car seats. Trooper Walton also stated that he did not see any signs that the occupants were scrambling around trying to get away because a trooper was approaching them. Trooper Wal-

4. The plain view doctrine permits the warrantless seizure of an object in plain view when: (1) an officer views the object from a lawful vantage point; (2) it is immediately apparent to him that the object is incriminating; and (3) the officer has a lawful right of access to the object. *Commonwealth v. McCree*, 592 Pa. 238, 249–51, 924 A.2d 621, 628–29 (2007). The automobile exception to the warrant requirement under the Fourth Amendment provides that the combination of probable cause to seize the object coupled with the exigency created by the inherent mobility of a vehicle gives an officer the law-

ful right to access the interior of the vehicle to retrieve the object. The more stringent "limited automobile exception" under Article I, § 8, however, grants a lawful right of access without a warrant only in the additional circumstance that an officer had no advance knowledge that the vehicle stopped or encountered was involved in a crime. This lack of notice coupled with the significantly diminished expectation of privacy in a vehicle permits an officer to access the car and seize the object in accordance with Article I, § 8's constitutional protections. *Id.* at 252–55, 924 A.2d at 630–31.

ton stated that he did not feel a search warrant was necessary. The court asked the Trooper if the car was able to back out, and the Trooper stated it was. Trooper Walton stated he was twenty feet from the vehicle when he pulled over. On cross examination, Trooper Walton was asked hypothetically if the driver had pulled out before the Trooper reached the vehicle, would the Trooper have followed him; Trooper Walton explained that he would not have been able to stop them unless they committed some type of violation. After the engagement, the troopers told the occupants to wait a few minutes and then they could drive back to Lock Haven University.

In reviewing a Commonwealth appeal from a suppression order: we follow a clearly defined standard of review and consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted.... The suppression court's findings of fact bind an appellate court if the record supports those findings.

*Commonwealth v. DeHart*, 745 A.2d 633, 636 (Pa.Super.2000) (citing *Commonwealth v. Nester*, 551 Pa. 157, 709 A.2d 879, 880–81 (1998)). "[T]his Court may reverse only when the legal conclusions drawn from those facts are erroneous." *Commonwealth v. Valentin*, 748 A.2d 711, 713 (Pa.Super.2000).

¶ 10 There are three categories of police interactions which classify the level of intensity in which a police officer interacts with a citizen, and such are measured on a case by case basis.

Traditionally, this Court has recognized three categories of encounters between citizens and the police. These categories include (1) a mere encounter, (2) an investigative detention, and (3) custodial detentions. The first of these, a "mere encounter" (or request for information), which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an "investigative detention" must be supported by reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

*Commonwealth v. Mendenhall*, 552 Pa. 484, 488 715 A.2d 1117, 1119 (1998) (*citing Commonwealth v. Polo*, 563 Pa. 218, 759 A.2d 372, 375 (2000)).

¶ 11 The question of law before us is whether the initial interaction between Trooper Walton and Appellee was a mere encounter or an investigative detention. We believe the situation was a classic example of the former.[5] The legal conclusions derived from the facts by the suppression court are erroneous.

To determine whether a mere encounter rises to the level of an investigatory detention, we must discern whether, as a matter of law, the police conducted a seizure of the person involved. To decide whether a seizure has occurred, a court must consider all the circumstances surrounding the encounter to determine whether the demeanor and conduct of the police would have communicated to a reasonable person that he

---

**5.** It is evident from the facts presented that once the dialogue between Trooper Walton and Appellee occurred, wherein Appellee blurted out that he was smoking marijuana, the mere encounter rose to the level of an investigative detention, which was supported by reasonable suspicion.

or she was not free to decline the officer's request or otherwise terminate the encounter. Thus, the focal point of our inquiry must be whether, considering the circumstances surrounding the incident, a reasonable person innocent of any crime, would have thought he was being restrained had he been in the defendant's shoes.

*Commonwealth v. Reppert*, 814 A.2d 1196, 1201–1202 (Pa.Super.2002) (citations omitted).[6]

¶ 12 In the case *sub judice*, a reasonable person in Appellee's position would be free to terminate the encounter. The record indicates for example, that Trooper Walton parked twenty feet away from the rear of the vehicle. N.T. 7/11/06 at 15. The record does not indicate that the overhead lights where turned on in the patrol car.[7] The vehicle in question was not obstructing traffic or in violation of any traffic regulations. Although people parked at this location regularly, they did not do so as frequently after dark. Thus, Trooper Walton was concerned enough to check on the condition of the vehicle and safety of its occupants. Moreover, Trooper Walton testified that no outward sign of distress emanated from the vehicle, and he did not observe anything that would lead him to believe that illegal activity was occurring. Further, Trooper Walton explained on cross-examination that the occupants were not scrambling around as if they were trying to get away because a

state trooper was approaching them. Instead, Trooper Walton approached the vehicle requesting information, asked if "everyone was ok" and then Appellee blurted out that they were smoking marijuana. N.T. 7/11/06 at 12. Trooper Walton at that point smelled burnt marijuana and observed the bong in the vehicle.

¶ 13 "Because the level of intrusion into a person's liberty may change during the course of the encounter, we must carefully scrutinize the record for any evidence of such changes." *Commonwealth v. Blair*, 860 A.2d 567, 572 (Pa.Super.2004). The facts do not suggest that Trooper Walton acted in a coercive manner and spoke forcefully to Appellee. Nor do the facts indicate that Trooper Walton initially had a reasonable suspicion to believe that Appellee and the occupants were committing any illegal activities. Rather, during the initial approach by Trooper Walton, facts that typify a mere encounter are present, not an investigative detention.

¶ 14 We find in the case *sub judice* that a reasonable person would have interpreted Trooper Walton's actions as an act of official assistance and not an investigative detention.

> Indeed, our expectation as a society is that a police officer's duty to serve and protect the community he or she patrols extends beyond enforcement of the Crimes Code or Motor Vehicle Code and includes helping citizens.... Given this

**6.** Notably, circumstances to consider include but are not limited to, the following: the number of officers present during the interaction; whether the officer informs the citizen they are suspected of criminal activity; the officer's demeanor and tone of voice; the location and timing of the interaction; the visible presence of weapons on the officer; and the questions asked. Otherwise inoffensive contact between a member of the public and the police cannot, as a matter of law,

amount to a seizure of that person. *Commonwealth v. Beasley*, 761 A.2d 621, 624–625 (Pa.Super.2000).

**7.** Relevant case law from this Court has held that even in situations where a patrol vehicle's overhead lights were on when a State Trooper approached a parked vehicle the interaction between the occupant and the trooper was a mere encounter. *See Commonwealth v. Conte*, 931 A.2d 690 (Pa.Super.2007).

expectation, a citizen whose vehicle sits apparently disabled along a highway would justifiably experience disbelief or even outrage if a law enforcement officer not otherwise engaged in official response drove by without pulling over and offering assistance.

*Commonwealth v. Conte*, 931 A.2d 690, 693–694 (Pa.Super.2007). As the vehicle was parked after dark, at a scenic location, most commonly used in the daylight, Trooper Walton had an elevated concern for the safety of the vehicle's occupants. In carrying out a duty to check on the safety of motorists, Trooper Walton discovered Appellee was engaged in illegal activity. We find that Trooper Walton's interaction with Appellee in the within case was in accordance with the law.

¶ 15 Reversed; Remanded; Jurisdiction relinquished.

¶ 16 DONOHUE, J., files a Dissenting Opinion.

DISSENTING OPINION BY DONOHUE, J.:

¶ 1 Our standard of review in cases where the Commonwealth appeals from a suppression order is to ascertain whether the record supports the factual findings of the suppression court and then to determine whether the suppression court's inferences and legal conclusions drawn therefrom are reasonable. *Common-*

*wealth v. Tucker*, 883 A.2d 625, 629 (Pa.Super.2005). In this case, the suppression court fairly considered the testimony of Trooper Walton and reached a reasonable decision to suppress the evidence that is fully supported by the record and prior decisions of this Court. Accordingly, I dissent.

¶ 2 The majority correctly identifies the issue before us as the classification of the initial interaction between Trooper Walton and the Appellee Christopher Collins ("Collins") as either a mere encounter or an investigative detention [8]. The test for distinguishing between these two types of situations is whether "the demeanor and conduct of the police would have communicated to a reasonable person that he or she was not free to decline the officer's request or otherwise terminate the encounter." *Commonwealth v. Reppert*, 814 A.2d 1196, 1201–02 (Pa.Super.2002).

¶ 3 Trooper Walton testified that he had no information to suggest that there was any illegal activity occurring in the vehicle in which Collins was a passenger. N.T., 7/11/06, at 11. To the contrary, the vehicle was merely parked at a scenic overlook specifically designed for such use. N.T., 7/11/06, at 9. It was not damaged or in disrepair, and it was not parked unusually, illegally, or on a roadway. N.T., 7/11/06, at 10–11. Trooper Walton positioned his vehicle so that his headlights would shine directly into the passenger compartment of

---

[8]. I respectfully disagree with the Majority's unnecessary discussion of the much debated "limited automobile exception" to the warrant requirement of Art. I § 8 of the Pennsylvania Constitution. Indeed, the Majority's disputable interpretation of the status of the law in Pennsylvania concerning warrantless seizures of articles from motor vehicles in general and the "lawful right of access" prong of the analysis in particular is entirely gratuitous. The sole issue on appeal is "[whether] the lower court err[ed] in finding that the officer did not have the requisite

suspicion necessary to approach Appellee's vehicle and ask to speak to the occupants." Appellant's Brief at 4. Given the ongoing debate in our Supreme Court on the proper application of the plain view doctrine to automobile searches and seizures, *see Commonwealth v. McCree*, 592 Pa. 238, 255–60, 924 A.2d 621, 632–34 (Cappy, C.J., concurring); *id.* at 260–61, 924 A.2d at 634–35 (Castille, J. (now C.J.) concurring), and the fact that this Court, in this case, has not been asked to address the issue, footnote # 4 of the majority opinion is, in this Judge's opinion, imprudent.

the car, and as he approached (leaving his headlights on) he also shone a flashlight inside the car. N.T., 7/11/06, at 4–6. To leave, the occupants of the car in which Collins was a passenger would have had to ignore Trooper Walton's approach and back out of the parking space. N.T., 7/11/06, at 14–15.

¶ 4 Based on these facts, and as the suppression court found, a reasonable person in Collins' position would not, as the majority's concludes, have considered himself "free to terminate the encounter." Trooper Walton, in uniform, got out of a marked vehicle and, while shining multiple lights into the passenger compartment, began asking Collins questions. A reasonable person would not think that he/she was free to simply ignore the trooper and to instead back out of the parking space and leave. See, e.g., Commonwealth v. Mulholland, 794 A.2d 398, 401–02 (Pa.Super.2002) (investigative detention found where officer approached the occupants of a legally parked van and, after shining the police cruiser's lights in the direction of the van, began asking questions); Commonwealth v. DeHart, 745 A.2d 633, 636–38 (Pa.Super.2000) (investigative detention found where troopers approached a legally stopped vehicle and began asking questions, concluding that "The overwhelming majority of lay people do not feel free to simply ignore a police officer's questions and continue driving along.").

¶ 5 The majority likewise lacks any support in the evidentiary record for its conclusion that a reasonable person "would have interpreted Trooper Walton's actions as an act of official assistance and not an investigative detention". Trooper Walton freely admitted that he did not observe anything to indicate that the car in which Collins was a passenger was in any distress or disrepair, or that its occupants otherwise required any assistance. N.T.,

7/11/06, at 10–11. As such, the majority's reliance on Judge Stevens' prior opinion in Commonwealth v. Conte, 931 A.2d 690 (Pa.Super.2007) is misplaced. In Conte, the police officer responded to a radio call regarding a possibly disabled vehicle and was advised by the defendant that he had a flat tire. Id. at 691.

¶ 6 In other cases, this Court has routinely held that a police approach to a vehicle to lend assistance may form the basis for a "mere encounter" only where the occupants of the vehicle would reasonably expect the officer to be rendering assistance. See, e.g., Commonwealth v. Fuller, 940 A.2d 476, 480 (Pa.Super.2007) (investigative detention found where "Appellee did not engage in any conduct that would suggest to the police that he needed assistance"); Commonwealth v. Hill, 874 A.2d 1214, 1216 (Pa.Super.2005) ("Appellee did nothing more than pull his truck to the side of the road in an effort to allow another motorist to pass. Appellee had no reason to expect that a police officer would stop to render aid.").

¶ 7 The issue in this case is not whether police officers should be allowed to lend assistance to the occupants of parked vehicles or people in general. Such safety checks are laudable and appropriate. Instead, the issue here is whether evidence of crimes must be suppressed when police encounters with citizens proceed without any reasonable suspicion of criminal activity. As a result, I would affirm the well-researched and eminently reasonable decision of the suppression court below.