J-A24015-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| FREDDIE KING | |
| Appellant | No. 2080 EDA 2014 |

Appeal from the Judgment of Sentence June 26, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0000712-2014

BEFORE:  PANELLA, J., WECHT, J., and STRASSBURGER, J.[*]

MEMORANDUM BY PANELLA, J.                    **FILED NOVEMBER 23, 2015**

Appellant, Freddie King, appeals from the judgment of sentence entered June 26, 2014, in the Court of Common Pleas of Philadelphia County.  No relief is due.

We take the underlying facts in this matter from the trial court's Rule 1925(a) opinion.

> On December 19, 2013, shortly after 7:00 p.m., Philadelphia Police Officers Devon Chadderton and his partner, Officer Ryan Hamill, were on foot patrol in the area of 57th and Hoffman Streets in Philadelphia, when they observed [King] approximately twenty feet away riding a bicycle south on 57th Street.  Officer Chadderton described the neighborhood as having a high rate of gun, drug, and gang violence.  At the time, [King] had a dog on a leash trailing behind him as he rode down the street.  The officers observed [King] dragging the dog "like literally head over heels until [the dog] could regain its own

_____

[*] Retired Senior Judge assigned to the Superior Court.

balance…." Instead of stopping after the dog stumbled, [King] continued pedaling and dragged the dog behind him for approximately thirty yards before the animal was able to regain its footing.

Based upon their observations the two officers followed [King] to cite him for cruelty to animals. [King] proceed to a residence on Ashland Avenue, where the officers saw him standing on the porch. The officers asked him if he had been riding a bicycle and if he had a dog. [King] responded affirmatively at which time the officers asked [King] to speak to them. Officer Chadderton saw that [King] had blood on his lip and smelled of alcohol.

As he approached the officers [King] did so hesitantly with his body at a forty-five degree angle as if to hide something or as if he was about to flee. Based upon these observations, the officers asked [King] to exit the fence that surrounded the property.

[King] complied with the officers' request and produced his identification card. Based on their observations, the officers asked [King] to place his hands on the fence so that they could perform a pat down of his clothing for their safety. Prior to conducting the frisk, [King] was asked if he was armed. [King] admitted that he had a gun in his pocket. Officer Chadderton then observed a gun in [King's] pocket and immediately confiscated it.

Trial Court Opinion, 11/10/14 at 2-3.

King was subsequently arrested and charged with carrying a firearm without a license, carrying a firearm on a public street, and cruelty to animals.[1] Prior to trial, King filed a motion to suppress physical evidence, which the trial court denied. Following a bench trial, the trial court convicted King of all charges. The trial court sentenced King to an aggregate term of 11½ to 23 months in prison. This timely appeal followed.

---

[1] 18 Pa.C.S.A. §§ 6106, 6108, and 5511, respectively.

King raises the following issues for our review.

1. Where police stopped appellant on his porch in order to issue a citation for a non-violent summary offense, and appellant behaved cooperatively throughout the detention, was he not unconstitutionally frisked as police lacked reasonable suspicion that he was armed and dangerous?

2. Where appellant, after having complied with a police order to place his hands against a fence, was asked by an officer if he had a weapon, did not his affirmative response constitute mere acquiescence to the officer's authority rather than consent to be frisked?

Appellant's Brief at 3.

We review the denial of a motion to suppress physical evidence as follows.

> Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct.
>
> [W]e may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.
>
> Further, [i]t is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony.

**Commonwealth v. Houck**, 102 A.3d 443, 455 (Pa. Super. 2014) (internal citations and quotations omitted).

The suppression court's factual findings are supported by the record. We therefore proceed to examine the propriety of the suppression court's

legal conclusions. Preliminarily, we note that King does not challenge the constitutionality of his detention. **See** Appellant's Brief at 14 n.4. Rather, he argues that the police lacked reasonable suspicion to conduct a valid frisk. We disagree.

> We observe that—in this case—the issue of when the "frisk" began is a pure question of law. **See, e.g., Commonwealth v. Collins**, 950 A.2d 1041, 1046 (Pa.Super.2008) (*en banc)* (determination of whether a police/citizen interaction was a "mere encounter" or an "investigative detention" is a question of law); **see also Crawford Cent. Sch. Dist. v. Commonwealth**, 585 Pa. 131, 888 A.2d 616, 620 (2005) ("[s]ince the facts are undisputed, we are left with a question of law"). Therefore, with respect to this issue, our standard of review is *de novo* and our scope of review is plenary. **Commonwealth v. Bullock**, 590 Pa. 480, 913 A.2d 207, 212 (2006).

As our Supreme Court has explained:

> It is well-established that a police officer may conduct a brief investigatory stop of an individual if the officer observes unusual conduct which leads him to reasonably conclude that criminal activity may be afoot. Moreover, if the officer has a reasonable suspicion, based on specific and articulable facts, that the detained individual may be armed and dangerous, the officer may then conduct a frisk of the individual's outer garments for weapons. Since the sole justification for a **Terry** search is the protection of the officer or others nearby, such a protective search must be strictly limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby. Thus, the purpose of this limited search is not to discover evidence, but to allow the officer to pursue his investigation without fear of violence.

> **Commonwealth v. Stevenson**, 560 Pa. 345, 744 A.2d 1261, 1264–1265 (2000) (internal citations and quotations omitted).

**Commonwealth v. Clemens**, 66 A.3d 373, 381 (Pa. Super. 2013).

Instantly, the undisputed facts reveal that although King did indeed cooperate with Officer Chadderton's orders to approach and show identification, his hesitant manner in doing so led the officer to believe that King was about to flee. King's behavior, coupled with the fact that the stop occurred in a high crime area, led the officer to conclude that it was necessary to conduct a frisk to ensure his safety. It is important to note, however, that the frisk did not commence the moment Officer Chadderton ordered King to place his hands on the fence so that he could perform the pat down.

> Indeed, by its very definition, the term "frisk" requires tactile contact. *See* BLACK'S LAW DICTIONARY 692 (8th ed.2004) (defining a "frisk" as "[a] **pat-down search** to discover a concealed weapon.—Also termed *pat-down.*") (emphasis added) (italics in original); MERRIAM–WEBSTER'S COLLEGIATE DICTIONARY 502 (11th ed.2003) (defining the noun "frisk" as "an act of frisking" and the transitive verb "frisk" as "to search (a person) for something (as a concealed weapon) by running the hand rapidly over the clothing and through the pockets"); *see also Terry* [*v. Ohio*, 392 U.S. 1, 24–25, 88 S.Ct. 1868 (1968)] (defining a frisk as an officer's "carefully limited search of the outer clothing of [an individual] in an attempt to discover weapons which might be used to assault [the officer];" further reasoning that an officer's justification for a "*Terry* frisk" must be greater than—or, at least, in addition to—that required for a "*Terry* stop" because a frisk is more intrusive than a detention).

*Id*. at 382.

What occurred here is that immediately prior to conducting the frisk, Officer Chadderton asked King if he possessed a weapon, to which King responded in the affirmative. At this point, Officer Chadderton certainly had reasonable suspicion to conduct the ensuing protective search for the

discovery of weapons.[2]  *See id*. at 382 ("[I]f the officer has a reasonable suspicion, based on specific and articulable facts, that the detained individual may be armed and dangerous, the officer may then conduct a frisk of the individual's outer garments for weapons.").  As King's admission provided Officer Chadderton with the requisite reasonable suspicion to conduct the pat down, it is simply irrelevant whether the admission amounted to consent to the search or "mere acquiescence to police authority."  Appellant's Brief at 13.  Accordingly, we find no error in the lower court's denial of King's suppression motion.

Judgment of sentence affirmed.

Judge Wecht joins the memorandum.

Judge Strassburger files a concurring memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/23/2015

---

[2] We reiterate that King does not contest the constitutionality of his detention.  His argument on appeal focuses *solely* on the legality of the frisk.