J-S41033-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| KYLE NICHOLAS MOYER, | |
| Appellant | No. 3519 EDA 2015 |

Appeal from the Judgment of Sentence October 1, 2015
In the Court of Common Pleas of Bucks County
Criminal Division at No(s): CP-09-CR-0004872-2015

BEFORE:  BENDER, P.J.E., DUBOW, J., and STEVENS, P.J.E.*

MEMORANDUM BY STEVENS, P.J.E.:                **FILED MAY 23, 2016**

This is an appeal from the judgment of sentence entered in the Court of Common Pleas of Bucks County following Appellant's conviction at a bench trial on the charges of receiving stolen property, possession of a firearm prohibited, firearms not to be carried without a license, carrying a firearm in public in Philadelphia, and possession of an instrument of crime.[1]  Appellant contends the trial court erred in failing to suppress the handgun, which was seized by the police from his vehicle.  We affirm.

Appellant was arrested and, represented by counsel, he filed a pre-trial motion seeking to suppress the evidence seized by the police from his

---

[1] 18 Pa.C.S.A. §§ 3925(a), 6105(a)(1), 6106(a)(1), 6108, and 907(a), respectively.

*Former Justice specially assigned to the Superior Court.

vehicle. On October 1, 2015, Appellant proceeded to a suppression hearing, at which Police Officers Emmanuel Folly and Darren Kardos testified.[2] The trial court has aptly set forth the facts derived from the officers' suppression hearing testimony as follows:

> Officer Folly testified that at around 12:25 [a.m.] on January 6, 2015, he and Officer Kardos had been on patrol in a marked police van with approximately eight other officers when they came across a vehicle with its windows down parked next to a fire hydrant on the 3400 block of North Eighth Street, which is located in a "high crime area" in Philadelphia. There were no other vehicles in the area.

> Officer Folly observed that there was a driver in the vehicle and a female, who was "slouched down" in the back seat, who then "put her hands underneath the seat." This action raised Officer Folly's suspicions that there might be a weapon in the vehicle. Officer Folly and Officer Kardos approached the vehicle and instructed the occupants to keep their hands where they could see them. They asked the occupants to exit the vehicle and then another male individual approached the vehicle from an adjoining street. That individual fled upon observing the presence of the police officers. The other police officers in the van pursued that individual on foot and in the van. Officer Kardos then searched the vehicle and recovered a handgun at which point the driver and the female were placed in handcuffs and taken into custody. (N.T., 10/1/15, pp. 7-33).

> Officer Darren Kardos testified that when the police van pulled up to the small four-door vehicle, the female occupant in the back seat looked very surprised, and in response to seeing the police van, she "immediately started hiding an object under

---

[2] At the suppression hearing, the prosecutor explained that, although the physical evidence, *i.e.*, a handgun, was seized from Appellant's vehicle in Philadelphia County, the police later discovered the handgun had been stolen from a store in Bucks County. Thus, upon agreement between the relevant district attorneys' offices, Appellant's criminal matter proceeded in Bucks County.

the seat." Officer Kardos stated that they observed the windows of the vehicle were down and became suspicious because it was very cold outside. Officer Kardos became concerned for his and the other police officers' safety when he observed the female's actions, and stated he "knew something was wrong." Officer Kardos testified that the neighborhood where this incident occurred is "pretty run down" and "is known for one thing, it's for heroin and cocaine. . . .[I]t's a very well-known drug area." As a result, he thought that the vehicle's occupants were there to purchase drugs. (N.T., 10/1/15, pp. 36-43).

Officer Kardos testified that he, Officer Folly[,] and [a] female police officer exited the police van and approached the vehicle. Officer Kardos approached the back of the vehicle and started a conversation with the female in the back seat, instructing her to put her hands on the headrest in front of her. He stated she was very nervous, and he observed "little orange needle caps [lying] around" in the back seat of the vehicle. Officer Kardos stated that because the female had difficulty following his directions and her actions were suspicious, he felt his safety was in jeopardy and he asked her to leave the vehicle. He then observed a small black handgun on the floor of the vehicle where her feet had been. Officer Kardos retrieved the gun and tried to unload it, but was unable to "figure out how to get the weapon unloaded safely." He then advised Officer Folly to handcuff the driver, who he identified as Appellant. Supervisors were then called over, at which point Appellant was taken into custody and placed in a police vehicle. (N.T., 10/1/15, pp. 43-51, 55-56).

After Appellant was handcuffed, Officer Kardos asked him how to unload the weapon in order to "make sure that the gun wasn't going to accidentally go off and injure somebody in our area." He stated that Appellant "was able to explain where the mechanisms were to make it safe, and he also was able to explain how the barrel popped up to unchamber a round, which I wasn't familiar with." Officer Kardos said the gun was completely unloaded and Appellant stated that he "bought if off some guy" and admitted that the gun was his. (N.T., 10/1/15, pp. 51-54).

Trial Court Pa.R.A.P. 1925(a) Opinion, filed 1/21/16, at 1-3.

Based on the aforementioned testimony, the trial court denied Appellant's pre-trial suppression motion, and after waiving his right to a jury trial, Appellant proceeded to a waiver trial based on stipulated facts. The trial court convicted Appellant of the offenses indicated *supra* and sentenced him to an aggregate of two years to four years in prison. Appellant filed a timely, counseled post-sentence motion, which the trial court denied following a hearing. This timely, counseled appeal followed, and all Pa.R.A.P. 1925 requirements have been met.

Appellant contends the trial court erred in failing to suppress the handgun, which was seized by the police from his vehicle. Specifically, Appellant contends that, at the moment the police stopped their marked police van adjacent to Appellant's parked vehicle, Appellant was subjected to an investigative detention. He further contends the police did not have the necessary reasonable suspicion to support this initial detention, *i.e.*, the stopping of their police van adjacent to Appellant's vehicle. Additionally, he avers that, to the extent the police stopping the van was a mere encounter, the encounter escalated to an investigative detention absent reasonable suspicion when the officers approached his parked vehicle.[3]

_____

[3] Appellant has presented his claims as three separate issues; however, since the claims are interrelated, we address them in conjunction with one another.

- 4 -

Initially, we note our standard of review for challenges to the denial of a suppression motion is as follows:

> Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted. . . .Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where. . .the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

*Commonwealth v. McAdoo*, 46 A.3d 781, 783–84 (Pa.Super. 2012) (quotations omitted). *See Commonwealth v. Benton*, 655 A.2d 1030 (Pa.Super. 1995) (indicating it is within the suppression court's sole province to make credibility determinations). Moreover, our scope of review from a suppression ruling is limited to the evidentiary record that was created at the suppression hearing. *In re L.J.*, 622 Pa. 126, 79 A.3d 1073, 1087 (2013).

Under constitutional jurisprudence, there are three categories of interactions between police and a citizen.

> The first of these is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an "investigative detention" must be

- 5 -

supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

***Commonwealth v. Fleet***, 114 A.3d 840, 845 (Pa.Super. 2015) (quotation omitted).

The question of law initially before us is whether, at the moment the police stopped their marked police van adjacent to Appellant's parked vehicle, Appellant was subjected to a mere encounter or an investigative detention.

When assessing whether an interaction escalates from a mere encounter to an investigatory detention, we employ the following standard.

To guide the crucial inquiry as to whether. . .a seizure has been effected, the United States Supreme Court has devised an objective test entailing a determination of whether, in view of all surrounding circumstances, a reasonable person would have believed that he was free to leave. In evaluating the circumstances, the focus is directed toward whether, by means of physical force or show of authority, the citizen-subject's movement has in some way been restrained. In making this determination, courts must apply the totality-of-the-circumstances approach, with no single factor dictating the ultimate conclusion as to whether a seizure has occurred.

***McAdoo***, 46 A.3d at 784 (quotations omitted). ***See Commonwealth v. Collins***, 950 A.2d 1041, 1046-47 (Pa.Super. 2008) (*en banc*) ("To decide whether a seizure has occurred, a court must consider all the circumstances surrounding the encounter to determine whether the demeanor and conduct

of the police would have communicated to a reasonable person that he. . . was not free to [leave].") (quotation omitted)).

In the present case, the officers' unrebutted suppression hearing testimony indicates that the officers were on patrol during the late evening/early morning hours in a marked police van containing several police officers. N.T., 10/1/15, at 9. Upon observing Appellant's vehicle parked on the side of the road next to a fire hydrant, Officer Folly, who was driving the police van, "pull[ed] up alongside th[e] vehicle that [was] parked." *Id.* at 15. Officer Folly indicated he did not activate the police van's emergency lights, siren, or loudspeaker. *Id.* He further indicated he parked so that the left side of the police van was four or five feet away from the right side of Appellant's vehicle. *Id.* at 16. He testified that, to the best of his recollection, there was nothing obstructing the front of Appellant's vehicle, and more specifically, there were no other vehicles parked in front of Appellant, which would have prevented him from leaving. *Id.*

Examining the totality of the individual circumstances presented in this case, *see Commonwealth v. Au*, 615 Pa. 330, 42 A.3d 1002, 1008 (2012), we disagree with Appellant that, at the moment the police stopped their marked police van adjacent to Appellant's parked vehicle, Appellant was subjected to an investigative detention. Rather, we conclude this was a mere encounter from which a reasonable person would feel free to leave. *See Au*, *supra* (holding that, despite the fact the officer positioned his

vehicle to illuminate the appellee's parked car and then approached with a flashlight, a mere encounter occurred since the police officer did not activate the emergency lights on his police vehicle, position his vehicle so as to block the appellee's car's egress, brandish his weapon, or make any overwhelming show of force); **Collins**, **supra** (holding mere encounter occurred where officer parked his patrol car twenty feet from the rear of the appellee's parked vehicle, the officer did not activate the patrol car's overhead lights, and the patrol vehicle did not obstruct the path of the appellee's vehicle). Accordingly, the police stopping of their van adjacent to Appellant's vehicle did not need to be supported by reasonable suspicion.[4]

We note that we specifically reject Appellant's argument that the number of police officers riding in the van, as well as the fact Appellant was parked on a vacant street, requires the conclusion that he was subjected to an investigative detention the moment the police stopped their van. Under the totality of the circumstances, and particularly absent facts establishing Appellant could even see into the van or was aware of the presence of several officers at this time,[5] we find the number of officers did not escalate

_____

[4] Accordingly, it is unnecessary to address Appellant's contention that the police did not have reasonable suspicion to support the initial encounter, *i.e.*, the stopping of their police van.

[5] For instance, the officers' testimony established the incident occurred when it was dark outside. Also, the police van was higher off of the ground than Appellant's vehicle such that the police were "looking down" into Appellant's
*(Footnote Continued Next Page)*

the mere encounter into an investigative detention. Moreover, the fact Appellant was parked in a vacant area is similar to the facts of **Au**, **supra**, and **Collins**, **supra**, where the appellate courts found the initial contact was a mere encounter.

Finally, Appellant contends that, to the extent the police stopping the police van was a mere encounter, the encounter escalated to an investigative detention absent reasonable suspicion when the officers approached his parked vehicle, instructing him to put his hands where they could see them. Assuming, *arguendo*, that Appellant was subjected to an investigative detention at this point, we conclude the detention was supported by the necessary reasonable suspicion.

> In order to conduct an investigatory stop, the police must have reasonable suspicion that criminal activity is afoot. In order to determine whether the police had reasonable suspicion, the totality of the circumstances—the whole picture—must be considered. Based upon that whole picture the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity.
>
> ***
>
> The. . . totality of the circumstances test applies to traffic stops or roadside encounters in the same way that it applies to typical police encounters. . . .Indeed, as we have observed, roadside encounters, between police and suspects are especially hazardous, and that danger may arise from the possible presence of weapons in the area surrounding a suspect.

_(Footnote Continued)_ ───────────

vehicle, which was parked to the side of the road under street lights. N.T., 10/1/15, at 32-33, 36-37.

***Commonwealth v. Simmons***, 17 A.3d 399, 403 (Pa.Super. 2011) (citations, quotations, and quotation marks omitted). Moreover, we note that merely because a suspect's activity may be consistent with innocent behavior does not alone make detention and limited investigation illegal. ***Commonwealth v. White***, 516 A.2d 1211 (Pa.Super. 1986). Rather, we view the circumstances through the eyes of a trained officer, not an ordinary citizen. ***Commonwealth v. Kemp***, 961 A.2d 1247, 1255 (Pa.Super. 2008) (*en banc*).

In the case *sub judice*, the officers testified at the suppression hearing that they noticed Appellant's vehicle parked near a fire hydrant on a vacant street during the late night/early morning hours. The officers testified the area was a well-known, high drug and high crime area. Despite the fact it was winter, the officers noticed the vehicle's windows were rolled down. After the officers stopped their police van, they noticed the female passenger "looked out at [the police, and] had a very surprised look." N.T., 10/1/15, at 37-38. The officers testified she then slouched down in her seat and "immediately started hiding an object under the seat." ***Id.*** at 38. Officer Kardos testified that, at this point, he was concerned the female passenger might "pull out a gun and shoot at us[.]" ***Id.*** at 43.

In light of the totality of the circumstances, we conclude the officers had reasonable suspicion to approach Appellant's parked vehicle and order him to put his hands where the police could see them.

For all of the aforementioned reasons, we conclude the trial court properly denied Appellant's motion to suppress. Accordingly, we affirm.

Affirmed.

Judge Dubow joins the memorandum.

PJE Bender concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/23/2016