J-S33014-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA    :    IN THE SUPERIOR COURT OF
                                                :            PENNSYLVANIA
                                                  :
                   v.                                  :
                                                 :
                                                 :
RAMON E. RAMOS-ENAMORADO         : 
                                                  :
                   Appellant                  :    No. 281 MDA 2024

Appeal from the Judgment of Sentence Entered February 14, 2024
In the Court of Common Pleas of Lancaster County Criminal Division at
No(s): CP-36-CR-0001105-2023

BEFORE: OLSON, J., KUNSELMAN, J., and NICHOLS, J.

MEMORANDUM BY OLSON, J.:                  **FILED OCTOBER 01, 2024**

Appellant, Ramon E. Ramos-Enamorado, appeals from the judgment of sentence entered on February 14, 2024. We affirm.

On November 13, 2022, Appellant was arrested and charged with driving under the influence of alcohol ("DUI"). Prior to trial, Appellant filed a motion to suppress, where he claimed that the police initially seized him without possessing reasonable suspicion or probable cause and, therefore, that all evidence against him must be suppressed. *See* Appellant's Suppression Motion, 5/24/23, at 1-6.

On October 3, 2023, the trial court held a hearing on Appellant's suppression motion, where the Commonwealth presented the testimony of Pennsylvania State Police Trooper Alex Barry. Trooper Barry testified that, on November 13, 2022, he was in full-uniform and driving a marked patrol car with his partner, Trooper Peter Minko. N.T. Suppression Hearing, 10/3/23, at

5. He testified that, at around 3:00 a.m., he was driving westbound along State Route 462, when he noticed a Ram 1500 pickup truck that was stopped on the eastbound shoulder, with "[o]ne or more of [its] signals" activated. *Id.* at 6-7.

Trooper Barry testified that he made a U-turn, "pulled in behind" the pickup truck, and "activated [his] yellow emergency lights, which are rear facing."[1,2] *Id.* at 7. As Trooper Barry testified, his actions were done with the intent of determining whether the occupants of the truck were in need of assistance. He testified:

> So throughout my six years [of being a Pennsylvania State Trooper], many times I've come across vehicles that are on the shoulder of the roadway. I pull off to ensure that that person doesn't need any assistance. My partner that night and I have changed countless tires on the side of the road. We've come across people who need medical assistance, who need roadway assistance with services other than what I can provide, so we contact a tow truck if they have not already. Stuff like that.

*Id.* at 8.

---

[1] As Trooper Barry testified, it was "not likely" that an occupant of the pickup truck would have been able to see the patrol car's rear-facing, yellow emergency lights. N.T. Suppression Hearing, 10/3/23, at 7. Specifically, he testified that it was possible that an occupant of the truck "could have seen [the yellow lights] reflecting off of buildings or something, but, again, not – it's not likely. When you turn around and look at our patrol car, you don't see any lights on except for the two headlights." *Id.*

[2] Trooper Barry emphasized that he never activated his overhead, "red and blue" emergency lights during the encounter. N.T. Suppression Hearing, 10/3/23, at 7.

Trooper Barry testified that, while his partner stayed in the patrol car, he exited the vehicle and walked up to the truck's driver's side window. He testified:

> I raised my hand . . . as a common gesture, as a wave, like hello. . . . At that time[,] the driver[, later identified as Appellant,] was already putting the driver's side window down. . . . I immediately notified [Appellant] he was free to leave.[3] I then asked him if he needed any kind of assistance.
>
> . . . [Appellant] said something to the effect of I'm good. By that time, by the – prior to him uttering those words, I had already seen that his eyes were bloodshot and watery and I had smelled a moderate odor of alcohol emitting from his person. . . . I asked him if he had had anything to drink. He related that he had one beer. . . . At that time I asked him to step out of the vehicle.

*Id.* at 9-11 and 20.

At the conclusion of the hearing, the trial court denied Appellant's motion because, it determined, Trooper Barry's initial contact with Appellant constituted a mere encounter. *Id.* at 26-27.

Following a stipulated bench trial, the trial court found Appellant guilty of DUI (high rate of alcohol) and DUI (general impairment)[4] and, on February

---

[3] Trooper Barry testified that he told Appellant "you're free to leave" in a "nonauthoritative way to make [Appellant] comfortable as if I'm not a police officer or trooper. I'm just there to help [him] if [he] need[ed] any assistance." N.T. Suppression Hearing, 10/3/23, at 20.

[4] 75 Pa.C.S.A. § 3802(b) and (a)(1), respectively.

14, 2024, the trial court sentenced Appellant to serve six months of probation for his convictions.

Appellant filed a timely notice of appeal. He raises one claim to this Court:

> Did the trial court err in finding the detention of [Appellant] to be lawful when a State Trooper detained Appellant without probable cause or reasonable suspicion?

Appellant's Brief at 4.

"Once a motion to suppress evidence has been filed, it is the Commonwealth's burden to prove, by a preponderance of the evidence, that the challenged evidence was not obtained in violation of the defendant's rights." *Commonwealth v. Wallace*, 42 A.3d 1040, 1047-1048 (Pa. Super. 2012) (*en banc*); *see also* Pa.R.Crim.P. 581(H). With respect to an appeal from the denial of a motion to suppress, our Supreme Court has declared:

> Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. When reviewing [such a ruling by the] suppression court, we must consider only the evidence of the prosecution and so much of the evidence of the defense as remains uncontradicted when read in the context of the record. . . . Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

*Commonwealth v. Eichinger*, 915 A.2d 1122, 1134 (Pa. 2007) (citations omitted). "It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their

- 4 -

testimony." ***Commonwealth v. Gallagher***, 896 A.2d 583, 585 (Pa. Super. 2006).

As we have explained, "[t]he Fourth Amendment to the [United States] Constitution and Article I, Section 8 of [the Pennsylvania] Constitution protect citizens from unreasonable searches and seizures. To safeguard this right, courts require police to articulate the basis for their interaction with citizens in [three] increasingly intrusive situations." ***Commonwealth v. McAdoo***, 46 A.3d 781, 784 (Pa. Super. 2012). Our Supreme Court has categorized these three situations as follows:

> The first category, a mere encounter or request for information, does not need to be supported by any level of suspicion, and does not carry any official compulsion to stop or respond. The second category, an investigative detention, derives from ***Terry v. Ohio*** and its progeny: such a detention is lawful if supported by reasonable suspicion because, although it subjects a suspect to a stop and a period of detention, it does not involve such coercive conditions as to constitute the functional equivalent of an arrest. The final category, the arrest or custodial detention, must be supported by probable cause.

***Commonwealth v. Smith***, 836 A.2d 5, 10 (Pa. 2003).

"To determine whether a mere encounter rises to the level of an investigatory detention, we must discern whether, as a matter of law, the police conducted a seizure of the person involved." ***Commonwealth v. Reppert***, 814 A.2d 1196, 1201-1202 (Pa. Super. 2002) (*en banc*). "To decide whether a seizure has occurred, a court must consider all the circumstances surrounding the encounter to determine whether the demeanor and conduct

of the police would have communicated to a reasonable person that he or she was not free to decline the officer's request or otherwise terminate the encounter." ***Id.*** at 1201-1202. "Thus, the focal point of our inquiry must be whether, considering the circumstances surrounding the incident, a reasonable person[,] innocent of any crime, would have thought he was being restrained had he been in the defendant's shoes." ***Id.*** at 1202 (quotation marks, citations, and brackets omitted).

"In evaluating the level of interaction, courts conduct an objective examination of the totality of the surrounding circumstances." ***Commonwealth v. Lyles***, 97 A.3d 298, 302 (Pa. 2014).

> [t]he totality-of-the-circumstances test is ultimately centered on whether the suspect has in some way been restrained by physical force or show of coercive authority. Under this test, no single factor controls the ultimate conclusion as to whether a seizure occurred – to guide the inquiry, the United States Supreme Court and [the Pennsylvania Supreme] Court have employed an objective test entailing a determination of whether a reasonable person would have felt free to leave or otherwise terminate the encounter. What constitutes a restraint on liberty prompting a person to conclude that he is not free to leave will vary, not only with the particular police conduct at issue, but also with the setting in which the conduct occurs.

***Id.*** at 302-303 (quotation marks, citations, and brackets omitted).

Our inquiry in these cases focuses upon a variety of factors including, but not limited to,

> the number of officers present during the interaction; whether the officer informs the citizen they are suspected of criminal activity; the officer's demeanor and tone of voice; the location and timing of the interaction; the visible

- 6 -

> presence of weapons on the officer; and the questions asked. Otherwise inoffensive contact between a member of the public and the police cannot, as a matter of law, amount to a seizure of that person.

*Commonwealth v. Collins*, 950 A.2d 1041, 1047 n.6 (Pa. Super. 2008) (*en banc*).

Appellant claims that the trial court erred when it denied his suppression motion because, when Trooper Barry initially approached his vehicle, the trooper subjected him to an investigatory detention; he claims that Trooper Barry did not possess the requisite reasonable suspicion to subject him to that investigatory detention. Appellant's Brief at 11. This claim fails. Indeed, the facts of this case are remarkably similar to those in *Commonwealth v. Bathurst*, 288 A.3d 492 (Pa. Super. 2023) and, in *Bathurst*, we concluded that the initial interaction between the police and the defendant constituted a mere encounter.

In *Bathurst*, two Pennsylvania State Police Troopers were driving their marked police cruiser at 1:53 a.m. one October night, when they observed "a truck parked in a vehicle pull-off with its rear lights on." *Bathurst*, 288 A.3d at 495. The troopers parked their vehicle approximately 15 yards behind the truck, but "did not activate [their] red and blue police lights." *Id.* at 498. One trooper then exited the patrol car and walked up to the truck's driver's side window. "As the trooper approached, [the defendant] rolled down the driver's side window and lowered the volume on the radio." *Id.* at 495. At this point, the trooper was able to detect the odor of alcohol coming from inside the truck and, following an investigation, the defendant was arrested for DUI. *Id.*

As in the case at bar, the defendant in *Bathurst* filed a suppression motion, where he claimed that the police interaction with him "was, from its inception, an investigative detention unsupported by" reasonable suspicion. *Id.* at 496. The trial court concluded that the initial interaction between the police and the defendant constituted a mere encounter and thus denied the defendant's motion. The defendant was later convicted of DUI. *Id.* at 495-496.

On appeal from his judgment of sentence, the defendant claimed that the trial court erred in determining that the initial interaction constituted a mere encounter. The *Bathurst* Court rejected the defendant's claim and held that the initial interaction between the police and the defendant constituted a mere encounter because: the Troopers parked behind the defendant's truck, which gave the defendant the option of "driv[ing] forward without impediment;" the Troopers did not activate their overhead, red and blue emergency lights; only one Trooper approached the defendant's vehicle; the defendant "voluntarily lowered his window" as the Trooper approached; the Trooper "did not tell [the defendant] he was under arrest or could not leave;" and, the Trooper "did not exercise any force or restrain" the defendant. *See id.* at 495-500.

*Bathurst* is on all fours with the case at bar and demands the same result. Certainly, as was true in *Bathurst*, here: Trooper Barry parked behind Appellant's truck, which gave Appellant the option of "driv[ing] forward without impediment;" Trooper Barry did not activate his overhead, red and

blue police lights and only activated his rear-facing, yellow emergency lights, which, Trooper Barry testified, Appellant was unlikely to have even seen;[5] only Trooper Barry approached Appellant's vehicle; Appellant "voluntarily lowered his window" as Trooper Barry approached; Trooper Barry specifically told Appellant that he was "free to leave" and did so in a "nonauthoritative way;" and, the Trooper "did not exercise any force or restrain" Appellant.  N.T. Suppression Hearing, 10/3/23, at 1-27; **see also Bathurst**, 288 A.3d at 495-500.

We further note that, during the initial interaction between Trooper Barry and Appellant, Trooper Barry did not request Appellant's identification,

_____

[5] We note that, in **Commonwealth v. Livingstone**, 174 A.3d 609 (Pa. 2017), our Supreme Court was confronted with a factual situation where a police officer "pulled his patrol car, with its [flashing overhead, red and blue] emergency lights activated, alongside [the defendant's] vehicle." **Livingstone**, 174 A.3d 613 and 615.  Our Supreme Court held that, under these facts, the defendant was subjected to an investigatory detention because "a reasonable person, innocent of any crime, would not interpret the activation of emergency lights on a police vehicle as a signal that he or she is [] free to leave." **Id.** at 621 (further citing the Pennsylvania Driver's Manual as instructing:  "You will know a police officer wants you to pull over when he or she activates the flashing red and blue lights on top of the police vehicle").

In the case at bar, Trooper Barry specifically testified that he did **not** activate his overhead, red and blue emergency lights.  Rather, Trooper Barry activated his rear-facing, yellow emergency lights.  Further, on appeal, Appellant does not claim that the activation of the rear-facing, yellow emergency lights on the patrol car played any factor in transforming this mere encounter into an investigative detention.  **See** Appellant's Brief at 1-18.

only inquired whether Appellant "needed any kind of assistance,"[6] and never sought to control Appellant's movements. *See Commonwealth v. Jones*, 378 A.2d 835, 840 (Pa. 1977) (holding that "the totality of the circumstances would have led a reasonable man to conclude he was being restrained or stopped for investigatory purposes" when: "[the officer] approached [the defendant] on a highway in a marked car and in uniform and addressed questions to him. In doing so, he did not merely ask [the defendant] his name; rather, he immediately sought identification from [the defendant], and, when [the defendant] complied he escalated the exercise of force by asking [the defendant] to be seated in the car. This latter request was not merely an attempt to obtain information; rather, while stated as a question, it sought control of [the defendant's] movement").

In accordance with *Bathurst*, we conclude that the initial interaction between Trooper Barry and Appellant was a mere encounter, which "[did] not need to be supported by any level of suspicion." *See Smith*, 836 A.2d at 10. Appellant's argument to the contrary thus fails.[7]

---

[6] This is in contrast with inquiries that "signal[] an investigative motive for the questioning and a degree of suspicion that the subject is engaged in criminality." *See Commonwealth v. Cost*, 224 A.3d 641, 659 (Pa. 2020) (Wecht, J., concurring).

[7] Appellant's argument on appeal is limited to his initial interaction with Trooper Barry. *See* Appellant's Brief at 1-18. Appellant makes no argument that Trooper Barry somehow lacked reasonable suspicion after the Trooper noticed "that [Appellant's] eyes were bloodshot and watery and [the Trooper] smelled a moderate odor of alcohol emitting from [Appellant's] person." *See id.*; *see also* N.T. Suppression Hearing, 10/3/23, at 9-11 and 20.

Judgment of sentence affirmed.  Jurisdiction relinquished.

Judgment Entered.

_____

Benjamin D. Kohler, Esq.
Prothonotary


Date: <u>10/01/2024</u>